**No. 05-1000 C (04-254C) (Consolidated)**
**(Judge Block)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ENRON FEDERAL SOLUTIONS, INC., et al.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFFS' (EFSI'S) COMPLAINT

---

**Timothy J. Heffernan**
**WATT, TIEDER, HOFFAR & FITZGERALD, L.L.P.**
**7929 Westpark Drive, Suite 400**
**McLean, Virginia 22102**
**Telephone 703/749-1000**
**Facsimile: 703/749-0699**

**Attorney for Liberty Mutual Insurance Co.**

**John J. Pavlick, Jr.**
**VENABLE LLP**
**575 7th Street, N. W.**
**Washington, D. C. 20004**
**Telephone: 202/344-4000**
**Facsimile: 202/344-8300**

**OF COUNSEL**

**Charles R. Marvin, Jr.**
**VENABLE LLP**
**575 7th Street, N. W.**
**Washington, D. C. 20004**
**Telephone: 202/344-4000**
**Facsimile: 202/344-8300**

**Attorneys for Enron Federal Solutions, Inc.**

**Electronically Filed on June 2, 2006**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS……………………………………………………………………ii

TABLE OF AUTHORITIES…………………………………………………………...v

PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFFS' [EFSI's] COMPLAINT...……………………………………………………1

PLAINTIFFS' BRIEF……………………………………………………………………..2

STATEMENT OF THE ISSUES…………………………………………………………2

STATEMENT OF FACTS………………………………………………………………..2

ARGUMENT………………………………………………………………………...…8

I. Plaintiffs Are Entitled To Summary Judgment Requiring The Government To Pay EFSI For The Upgrades EFSI Made To The Fort Hamilton Utility Systems Under the Contract ………………………………………………………………8

A. Summary Judgment Is Appropriate……………………………………………...10

1. The Material Facts Are Undisputed……………………..……..................10

2. Where, As Here, The Terms Of The Contract At Issue Are Unambiguous, The Interpretation Of Those Terms Is Appropriate For Summary Judgment…….11

B. There Is No Legal Basis Upon Which the Government May Avoid its Obligation To Pay (Or Credit) EFSI For The Improvements To The Fort Hamilton Utility Systems Performed By EFSI Under The Contract………………………………13

1. The Termination Liability Clause Requires The Government To Pay EFSI For The Improvements Made By EFSI To The Fort Hamilton Utility Systems Under The Contract ..........................................................................14

a. Use Of The Termination Liability Clause Was Both Authorized And Appropriate For This Contract………..................................................15

1) The FAR Did Not Prevent The Use Of The Termination Liability Clause Here………………………………………………………..16

2) The Contract Reflects The Parties' Intent That The Termination Liability Clause Would Be Used To Govern The Rights Of The Parties In The Event Of Early Termination……………………………………17

b. The Applicability And Terms Of The Termination Liability Clause Were Negotiated And Agreed To By The Parties…………………….……….21

2. The Termination For Default Clause In The Contract Requires The Government To Pay EFSI For The Improvements Made And Services Provided By EFSI Under The Contract……………………………………...24

3. If, As The Government Itself Previously Argued, The Contract Was Required To Contain Clauses Appropriate For Construction, The Government Still Must Pay EFSI For The Improvements Made By EFSI To The Fort Hamilton Utility Systems Under The Contract…………………………………………25

a. The Default Clause For Construction Requires The Government To Pay EFSI For The Utility Upgrades And Improvements…………….............26

b. Other FAR Construction Clauses Require The Government To Pay EFSI For The Utility Upgrades Or Reflect That Requirement………………...28

II. Defendant Is Not Entitled To Summary Judgment On Counts I and II Of EFSI's Complaint…………………………………………………………........................29

A. To Prevail In Its Motion For Summary Judgment, Defendant Must Demonstrate That There Are No Facts Or Legal Theories Upon Which EFSI Can Prevail…...29

B. Defendant's Interpretation of the Termination Liability Clause Is Unreasonable And Insupportable…………………………………………………………..30

C. Even If, Arguendo, Defendant's Interpretation Of The Termination Liability Clause Is Correct, EFSI Can Prevail Upon Other Theories Of Recovery Based On The Facts Pleaded By EFSI In Its Complaint……………………………………31

III. This Court Has Jurisdiction Over EFSI's Alternative *Quantum Meruit* Claims Under The Implied-In-Fact Contract Exception……………………………………………32

A. This Court Has Jurisdiction Over *Quantum Meruit* Claims Based Upon An Implied-In-Fact Contract Between The Government And The Contractor……...32

1. This Court May Grant A Contractor *Quantum Meruit* Recovery Where The Underlying Contract Is Implied-In-Fact……………….................................33

2. This Court Has Recognized And Enforced Implied-In-Fact Contractual Terms Where An Express Contract Between The Parties Contains A Defective Clause……………………………………………………………………...34

B. EFSI's Alternative *Quantum Meruit* Claims Arise From An Implied-In-Fact Contract Under Which The Government Promised To Pay EFSI For The Utility System Upgrades If The Contract Was Terminated For Any Reason…………...36

C. Alternatively, EFSI Should Be Allowed To Amend Its Complaint To Correct Any Deficiencies In Its Pleading……………………………………………………...37

CONCLUSION……………………………………………………………………..37

NOTICE OF FILING………………………………………………………………….40

APPENDIX………………………………………………………..Filed With Motion

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)……………………………..30

*Arizona v. United States*, 216 Ct. Cl. 221, 235-36, 575 F.2d 855 (1978)………………..12

*Atlas Corp. v. United States*, 895 F.2d 745, 754 (Fed. Cir. 1990)………………………34

*Barrett Ref. Corp. v. United States*, 242 F.3d 1055, 1060 (Fed. Cir. 2001)……………..34

*Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375-76 (Fed. Cir. 2004)…..12

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1381 (Fed. Cir. 2001)...10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)…………………………………10

*City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990)…………………36

*Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003)…………11

*Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313

(Fed. Cir. 2006)...……………………………………………………………………...30

*Flink/Vulcan v. United States*, 63 Fed. Cl. 292, 298-99 (2004)…………………………12

*Fluor Enter., Inc. v. United States*, 64 Fed. Cl. 461, 495-96 (2005)…………………….33

*Foman v. Davis*, 371 U.S. 178, 182 (1962)……………………………………………...37

*Forest Products Northwest, Inc. v. United States*, 62 Fed. Cl. 109, 120 (2004)………...32

*Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985)…………...11

*General Elec. Co. v. United States*, 60 Fed. Cl. 782, 791 (2004)………………………..12

*G.L. Christian and Assoc. v. United States*, 160 Ct. Cl. 58 (1963)…………………..11, 25

*Gold Line Ref., Ltd. v. United States*, 43 Fed. Cl. 291, 294-95 (1999)………………33, 34

*Hol-Gar Mfg. Corp. v. United States*, 169 Ct. Cl. 384, 388, 351 F.2d 972, 975 (1965)...12

*John C. Kohler Co. v. United States*, 204 Ct.Cl. 777 (1974) ……………………………24

*Kelley v. United States*, 19 Cl. Ct. 155, 161 (1989)……………………………………...12

*King Fisher v. United States*, 51 Fed. Cl. 94, 99 (2001)…………………………………12

*Martin v. United States*, 20 Cl. Ct. 738, 745 (1990)……………………………………..12

*Nicholson v. United States*, 29 Fed. Cl. 180, 186 (1993)………………………………...10

*Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 459 (2001)…………...12, 16

*PBI Elec. Corp. v. United States*, 17 Cl. Ct. 128, 137 (1989)……………………………27

*PCL Constr. Serv., Inc. v. United States*, 47 Fed. Cl. 745, 810 (2000)………………….28

*Perri v. United States*, 340 F.3d 1337, 1343-44 (Fed. Cir. 2003)……………………33, 35

*Sea-Land Serv., Inc. v. United States*, 213 Ct. Cl. 555, 567, 553 F.2d 651, 658 (1977)...12

*S. Cal. Edison v. United States*, 58 Fed. Cl. 313, 321 (2003)……………………………11

*Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562, 1567 (Fed. Cir. 1987)……………………………………………………………………..10

*Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)…………..36

*United States v. Amdahl*, 786 F.2d 387, 393 (Fed. Cir. 1986)…………………………...33

*Urban Data Sys., Inc. v. United States*, 699 F.2d 1147, 1154 (Fed. Cir. 1983)……..33, 34

*Webster Univ. v. United States*, 20 Cl. Ct. 429, 432 (1990)……………………………..10

**STATUTES**

28 U.S.C. § 1491 (2000)…………………………………………………………………32

**REGULATIONS**

FAR 31.111(a)(5)…………………………………………………………………...28

FAR 36.101(c)………………………………………………………………................25

FAR 41.101……………………………………………………………………………16

FAR 41.501(d)……………………………………………………………………...16

FAR 41.501(d)(4)……………………………………………………………..16

FAR 49.404(d)…………………………………………………………….28, 29

FAR 49.404(e)………………………………………………………………...29

FAR 49.404(e)(1)……………………………………………………………...29

FAR 49.404(e)(3)……………………………………………………………...29

FAR 49.406……………………………………………………………………29

FAR 49.504(c)(1)……………………………………………………………...25

FAR 52.232-5………………………………………………………………..26, 28

FAR 52.232-5(f)………………………………………………………………28

FAR 52.241-3(a)……………………………………………………………..3

FAR 52.241-10……..……………………………………………..5, 6, 14, 15, 17, 20

FAR 52.249-2…………………………………………………………………6, 20

FAR 52.249-8…………………………………………………..6, 11, 14, 24, 31

FAR 52.249-8(f)………………………………………………………………24

FAR 52.249-10………………………………………………..11, 14, 25, 27, 31

FAR 52.249-10(a)……………………………………………………………27, 28

EFAR 652.241-10……………………………………………………………..14

## **RULES**

RCFC 12(b)(1)……………………………………………………………………...32

RCFC 15(a)………...…………………………………………………………….37

RCFC 56(c)……….....…………………………………………………………….29

FED. R. CIV. P. 56(c)…………………………………………………………..29

## SECONDARY SOURCES

11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE 3D ¶ 56.11[8]
(3d ed. 2006)………………………………………………………………………..31

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ENRON FEDERAL SOLUTIONS, INC., et.al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 05-1000C (04-254C)** |
| | ) | **(Consolidated)** |
| **UNITED STATES OF AMERICA,** | ) | **(Judge Block)** |
| **Defendant.** | ) | |

**PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFFS' (EFSI'S) COMPLAINT**

Plaintiffs, Enron Federal Solutions, Inc. ("EFSI") and Liberty Mutual Insurance Co. ("Liberty Mutual"), by and through undersigned counsel, for the reasons stated in the attached brief, respectfully request that this Court deny both the Government's Motion to Dismiss Counts 3 and 4 of EFSI's Complaint ("MTD") and the Government's Motion for Summary Judgment with regard to EFSI's Complaint ("MSJ").

Plaintiffs also respectfully request that this Court grant summary judgment in favor of Plaintiffs on the issue of the Government's obligation to pay for the capital improvements and upgrades made by EFSI to the utility systems at Fort Hamilton, New York, prior to the termination for default of the contract under which plaintiff made such capital improvements and upgrades. As demonstrated in the attached brief, there is no genuine issue of any material fact with respect to this issue and plaintiffs are entitled to judgment on this issue as a matter of law.

**PLAINTIFFS' BRIEF**

Statement of the Issues

Does the contract between EFSI and the Government provide a mechanism for EFSI to receive compensation for the substantial improvements made by EFSI to the Fort Hamilton utility systems prior to the Government's termination of the contract for default?

Does this Court have jurisdiction over EFSI's alternative claims for recovery based on *quantum meruit* where those claims arise from an implied-in-fact contract between EFSI and the Government with respect to payment for improvements to the Fort Hamilton utility systems in the event of a termination of an express contract for any reason?

Statement of Facts

On January 22, 1999, the United States Army Corps of Engineers ("Army" or "Government") issued Solicitation No. DAC51-99-R-0006 ("Solicitation") seeking proposals from potential contractors to own, upgrade or replace as necessary, operate and maintain the electrical, natural gas, potable water, and wastewater utility systems ("Utility Systems") at the United States Army Garrison, Fort Hamilton, New York. The Solicitation was issued as part of the Government's initiative to privatize certain Government-owned utility systems. Complaint[1], ¶ 4; Answer, ¶ 4; Complaint, Exhibit 2 (Contracting Officer's Final Decision ("COFD") at 1; Government's Appendix to Dispositive Motion ("Govt. App.") at 3-4, 6.

---

[1] Unless otherwise identified, all references to "Complaint" and "Answer" refer to the Complaint and Answer filed by the parties in COFC No. 05-1000C. Reference to the Answer filed by the Government in COFC No. 04-254C, which was consolidated with this case on February 27, 2006 by Order of this Court, is specifically identified.

EFSI submitted its technical proposal in response to the Solicitation on July 28, 1999. On August 27, 1999, EFSI submitted its Final Proposal Revision, reconfirming EFSI's July 27, 1999, Technical Proposal and submitting EFSI's Cost Proposal. Complaint, ¶ 6; Answer, ¶ 6; Govt. App. at 11, 18; Plaintiffs' Appendix ("Plaintiffs' App.") at 3-4.

On December 2, 1999, the Government entered into Utilities Privatization Contract No. DACA51-00-C-0001 ("Contract") with EFSI and expressly incorporated EFSI's proposal into the Contract. Complaint, ¶ 7; Answer, ¶ 9; Govt. App. at 18-19. Under the terms of the Contract, EFSI was required to upgrade the Utility Systems as necessary by making the capital improvements required to meet standards listed in the Contract. The Contract required EFSI to commence all utility distribution system upgrades or replacements at the beginning of the Contract term, and to operate and maintain the Utility Systems for a period of up to ten (10) years, commencing March 1, 2000. Complaint, ¶ 8; Answer, ¶ 9; Complaint, Exh. 2 (COFD) at 1; Govt. App. at 4-5; Plaintiffs' App. at 7 (Contract, ¶ I.84 - FAR Clause 52.241-3(a)).

Under the Contract, EFSI agreed to fund agreed-upon capital improvements necessary for acquiring, maintaining and operating the Utility Systems. EFSI was also required to fund the cost of expansion or upgrade of these systems as a capital investment, which was to be recovered by EFSI over the contract period. Complaint, ¶ 9 (first two sentences); Answer, ¶ 9; Govt. App. at 6 (Contract, ¶ H.1). In return, the Contract provided that title to the utility systems would pass from the Government to EFSI. Complaint, Exh. 1, Attachment 1 at 2, 5 (EFSI's Certified Claim); Plaintiffs' App. at 7-8. In its Cost Proposal, EFSI estimated that the required capital improvements and

upgrades would cost $11,616,000 to implement. Complaint, ¶ 9 (third sentence); Answer, ¶ 9; Plaintiffs' App. at 16-17.

In return for EFSI's capital improvement work and operations and maintenance services, the Government promised to pay EFSI a fixed price of $25,377,637.62, as modified, in monthly installments over the term of the Contract. Complaint, ¶10 (first sentence); Answer, ¶ 10; Govt. App. at 19. Under the Contract, each of the Government's scheduled monthly payments included a separately calculated fixed amount that would, over the term of the contract, amortize EFSI's price for its capital improvements and upgrades of the Utility Systems including interest. EFSI proposed, and the Government agreed to pay, a price of $11,616,000 for the upgrades, payable in such monthly installments over ten years, at an annual interest rate of 8%. Complaint, ¶ 10 (second sentence); Answer, ¶ 10; Govt. App. at 4-5, 8 (Contract, ¶¶ B.2.1 through B.2.5, ¶ H.3.2); Plaintiffs' App. at 16-17 (Portion of EFSI Cost Proposal stating price terms for upgrades). Under paragraph B.2.1 of the Contract, this component of the Government's payment obligation was identified as the Annual Initial Upgrade, and defined as

> The Contractor's initial capital investment price, amortized over a desired period at an annual interest rate, for system improvements to comply with utility standards and any other required/requested services (mapping, unique services, etc.), or new utility distribution system design, construction, installation and applicable required tax payments on the upgraded components. It is anticipated that the natural gas, potable water and wastewater utility distribution systems will need either major capital repair or complete reconstruction to comply with modern, stringent Industry Standards. All utility distribution system upgrades or replacements shall be completed by the end of the first year of the contract.

Govt. App. at 4 (Contract, ¶ B.2.1).

Should the Contract be terminated prior to the end of its term, the Contract established the relative rights and obligations of the parties. The Contract, ¶ C.4.7, Disposition Upon Expiration or Termination, provided that

> Upon expiration or termination of this contract, the Government shall have the option to negotiate a sole source contract with the Contractor or reacquire the facilities as described in Section H. Reacquisition of the utility facilities will be performed only when it is determined to be in the best interest of the Government.…The Contractor's unrecovered investment will be determined as set forth in Paragraph H.8, Termination Liability. See also Termination for Default, Termination for the Convenience of the Government, and Termination Liability, in Section I, Contract Clauses.

Complaint, ¶ 11 (first and second sentences); Answer, ¶ 11; Plaintiffs' App. at 6 (Contract, ¶ C.4.7).

In Paragraph ¶ H.8, Termination Liability, the Contract provided that "The termination liability of the parties with respect to the provision of electric, natural gas, potable water and wastewater utility service under this contract shall be based upon FAR 52.241-10 Termination Liability (Feb 1995). See Section I, Contract Clauses." Complaint, ¶ 11 (second sentence); Answer, ¶ 11; Govt. App. at 10 (Contract ¶ H.8). Federal Acquisition Regulation ("FAR") Clause 52.241-10, Termination Liability (Feb. 1995) provided that:

> (a) If the Government discontinues utility service under this contract before completion of the facilities cost recovery period specified in paragraph (b) of this clause, in consideration of the Contractor furnishing and installing at its expense, the new facility described herein, the Government shall pay termination charges, calculated as set forth in this clause.
> (b) Facility cost recovery period. The period of time, not exceeding the term of this contract, during which the net cost of the new facility shall be recovered by the Contractor is ______ months. [Insert negotiated duration.]

> (c) Net facility cost. The cost of the new facility, less the agreed upon salvage value of such facility, is $_______. [Insert appropriate dollar amount.]
> (d) Monthly facility cost recovery rate. The monthly facility cost recovery rate which the Government shall pay the Contractor whether or not service is received is $_____. [Divide the net facility cost in paragraph (c) of this clause by the facility's cost recovery period in paragraph (b) of this clause and insert the resultant figure.]
> (e) Termination charges. Termination charges = $____. [Multiply the remaining months of the facility's cost recovery period specified in paragraph (b) of this clause by the monthly facility cost recovery rate in paragraph (d) of this clause and insert the resultant figure.]
> (f) If the Contractor has recovered its capital costs at the time of termination there will be no termination liability charge.

Complaint, ¶ 12; Answer, ¶ 12, FAR 52.241-10.

The Contract incorporated by reference FAR 52.249-8, Termination for Default (Fixed-Price Service and Supply) (April 1984). Complaint, Exh. 1 (EFSI's Certified Claim) at 7; Plaintiffs' App. at 19 (Contract, ¶ I.46).

EFSI's proposal was incorporated into the Contract by the Government without modification. Complaint, ¶ 13 (first sentence); Answer, ¶ 13; Govt. App. at 19. EFSI's proposal, and thus the Contract, included the following condition: "[i]n the event the contract is terminated, the Contractor shall be granted compensation for its capital costs in accordance with FAR 52.241-10 (Termination Liability) and for all of its other costs in accordance with FAR 52.249-2 (Termination for Convenience)." Complaint, ¶ 13 (first sentence); Answer, ¶ 13; Plaintiffs' App. at 18 (EFSI proposal page).

By November 2001, EFSI had substantially completed all of the capital improvements and upgrades of Ft. Hamilton's potable water, natural gas and electric distribution systems, and had completed portions of the capital improvements and upgrades on the storm and wastewater/sewer system as required by the Contract. Complaint, ¶ 15; Answer, ¶ 15; Answer (No. 04-254C), ¶ 17. In his Contracting

Officer's Final Decision denying EFSI's certified claim, the Contracting Officer admitted that "EFSI's performance during the first year of contract performance was successful and in conformance with all contract requirements. EFSI's progress on capital improvements during this time was either on or ahead of schedule." Complaint, Exhibit 2 (COFD) at 2.

From April 2000 through December 2001, EFSI provided operations and maintenance services for the Utility Systems. Complaint, ¶ 18 (first sentence); Answer, ¶ 18. As of December 3, 2001, the Government has paid EFSI only $4,225,102.24 under the Contract. Answer, ¶¶ 17, 18.

On December 21, 2001, EFSI filed a petition for reorganization under Chapter 11 of U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York. Complaint, ¶ 22; Govt. App. at 20. On February 26, 2002, the Government terminated the Contract for default. Complaint, ¶ 24; Answer, ¶ 24; Govt. App. at 20-22.

On April 15, 2005, EFSI submitted to the Government a certified claim seeking payment under the Contract of the amounts due to EFSI for the capital improvements and upgrades made by EFSI to the Utility Systems and for the operation and maintenance of those systems. In its claim, EFSI demanded payment in the amount of $10,476,801, less a Remaining Work credit, plus applicable interest. Complaint, ¶ 31 (first two sentences); Answer, ¶ 31; Complaint, Exhibit 1 (EFSI's Certified Claim).

By letter dated August 11, 2005, the Government issued the COFD, denying EFSI's claim for payment of the majority of the amount due to EFSI for the capital improvements/upgrades made by EFSI to the Fort Hamilton utility distribution systems. Complaint, ¶ 32 (first two sentences); Answer, ¶ 32; Complaint Exhibit 2 (COFD). In the

COFD, the Government conceded that the Government owes EFSI the amount of $211,262.95 for its November 2001 invoice, which includes the monthly amount for amortization of the Utility Systems improvements and upgrades and an amount for the Operations and Maintenance services for November 2001. Notwithstanding the Government's admission of liability, the Government refused to pay EFSI for that invoice until "it is decided whether EFSI or Liberty has a priority claim to those retained funds." Exhibit 2, unnumbered page 4. Complaint, ¶ 33 (first three sentences); Answer, ¶ 33; Complaint, Exhibit 2 (COFD) at 6.

## ARGUMENT

### I. Plaintiffs Are Entitled To Summary Judgment Requiring The Government To Pay EFSI For The Upgrades EFSI Made To The Fort Hamilton Utility Systems Prior To Termination Of The Contract For Default.

Over the course of this dispute concerning EFSI's entitlement to payment for the millions of dollars of capital upgrades and improvements EFSI made to the Government's utility systems at Fort Hamilton, the Government has taken a "defense-in-depth" approach, erecting a series of analytical "fortifications" in its attempt to deny EFSI any recovery for that work. The interpretive sleight of hand underlying the positions taken to date by the Government in this dispute, however, can neither conceal nor overcome the fact that the Government's refusal to pay EFSI for the work is directly contrary to the fundamental principles of law and equity with which this Court and other Government contract dispute resolution forums have long determined the relative rights and obligations of parties whose contract has been terminated. Once this dispute is examined in the light of these principles, it becomes evident that contrary to the

Government's argument, it is the Government, not EFSI, that seeks a windfall as a result of this situation.

By this motion, EFSI seeks the recognition and application by this Court of a fundamental principle permeating the law of Government contract terminations: "You get what you pay for - you pay for what you get." As demonstrated below, this fundamental principle, reflected throughout the FAR and in the case law interpreting the FAR, applies regardless of the type of work performed, the method of termination (e.g., termination for convenience of the Government or for default), or the basis of claim (express contract or contract implied-in-fact). Moreover, the facts necessary to support the application of this fundamental principle under these circumstances are undisputed. The Government promised to pay EFSI for capital upgrades and improvements to its utility systems at Fort Hamilton. EFSI constructed and installed the upgrades and improvements, the Government took possession of those upgrades and improvement, and, to this very day, continues to use those upgrades and improvements for its own benefit. The Government, however, has simply and stubbornly refused to "pay for what it got."

Where, as here, neither the facts, nor the law or its application are ambiguous, one would not expect to require the intervention of this Court to resolve such a basic and incontrovertible issue. Intervention appears to be necessary, however, to focus the Government's attention upon the only issue actually separating the parties - the precise quantification of the amount owed to EFSI for the substantial capital upgrades and improvements EFSI made to the Government's property before the termination of EFSI's contract.

**A. Summary Judgment Is Appropriate.**

A party will prevail on a motion for summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue is genuine only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant, … while the materiality of the fact is determined by reference to applicable legal standards." *Nicholson v. United States*, 29 Fed. Cl. 180, 186 (1993) (citing *Webster Univ. v. United States*, 20 Cl. Ct. 429, 432 (1990); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562, 1567 (Fed. Cir. 1987)). "[A] motion for summary judgment may be granted when, drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant can not prevail." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1381 (Fed. Cir. 2001).

**1. The Material Facts Are Undisputed.**

As demonstrated in the parties' Proposed Findings of Uncontroverted Facts, there is no dispute between the parties with respect to any material facts which are relevant to the resolution of the issue presented in this motion, e.g. the existence of a valid contract or the content of the relevant clauses that are expressly contained within that contract. There is also no dispute concerning the content of the clause(s) that the Government has asserted should be incorporated into the Contract by operation of law (i.e., FAR construction clauses).

Indeed, in the COFD and in the Government's MSJ, the Government's primary position has been that certain terms contained within the Contract, i.e., the Termination Liability clause and FAR clause 52.249-8, Default - Supplies and Services, are to be

given no legal effect. In its MSJ, the Government asserts that the Termination Liability clause in the Contract, a clause which establishes the methodology by which EFSI would be reimbursed for its work upgrading the Fort Hamilton utility systems should the Contract be terminated prior to its term, is ineffective under these circumstances. *See* MSJ at 11-14. In its COFD denying EFSI's certified claim, the Government also argued that the Default clause in the Contract, FAR 52.249-8, Default - Supplies and Services, is inappropriate for use in these circumstances. The Government argued that by operation of law, the appropriate default clause for this work was FAR 52.249-10, Default - Construction. *See* COFD at 5-6 (citing *G.L. Christian and Assoc. v. United States*, 160 Ct. Cl. 58 (1963)). The Government then argued that under its interpretation of FAR 52.249-10 and the risk allocation provisions in the Contract, EFSI forfeits any right to payment for millions of dollars worth of improvements and upgrades EFSI made to the Fort Hamilton utility systems under the Contract. *See* COFD at 5-8.

Each of these arguments presents legal issues regarding the interpretation of the terms of the Contract, and are properly resolved through a motion for summary judgment.

**2. Where, As Here, The Terms Of The Contract At Issue Are Unambiguous, The Interpretation Of Those Terms Is Appropriate For Summary Judgment.**

Interpretation of the terms of a Government contract is a matter of law. *See Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985). To interpret a contract, this Court must "'begin[] with the language of the written agreement,'" *S. Cal. Edison v. United States*, 58 Fed. Cl. 313, 321 (2003) (quoting *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003)), and give to the contract language "that meaning that would be derived from the contract by a reasonable [sic] intelligent

person acquainted with the contemporaneous circumstances." *Hol-Gar Mfg. Corp. v. United States*, 169 Ct. Cl. 384, 388, 351 F.2d 972, 975 (1965). Furthermore, "an interpretation [that] gives a reasonable meaning to all parts [of a contract] will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." *Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 459 (2001) (quoting *Arizona v. United States*, 216 Ct. Cl. 221, 235-36, 575 F.2d 855 (1978)).

When a contract's terms are unambiguous, resort to extraneous information to aid interpretation is unnecessary, *see Flink/Vulcan v. United States*, 63 Fed. Cl. 292, 298 (2004) (citing *Sea-Land Serv., Inc. v. United States*, 213 Ct. Cl. 555, 567, 553 F.2d 651, 658 (1977), *cert. denied*, 434 U.S. 1012 (1978)), and a court may construe an unambiguous writing at the summary judgment stage. *See Flink/Vulcan*, 63 Fed. Cl. at 299 (citing *Martin v. United States*, 20 Cl. Ct. 738, 745 (1990); *Kelley v. United States*, 19 Cl. Ct. 155, 161 (1989)). Ambiguous contract provisions are those that are susceptible to multiple interpretations. *See Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375-76 (Fed. Cir. 2004). To demonstrate an ambiguity, however, a party must do more than merely proffer two different interpretations of a contract provision. *See General Elec. Co. v. United States*, 60 Fed. Cl. 782, 791 (2004) (quoting *King Fisher v. United States*, 51 Fed. Cl. 94, 99 (2001)).

As the next section demonstrates, there is no dispute between the parties with respect to any material fact that would affect the proper interpretation of the Contract terms at issue under the principles followed by this Court.

**B. There Is No Legal Basis Upon Which the Government May Avoid Its Obligation To Pay (Or Credit) EFSI For The Improvements To The Fort Hamilton Utility Systems Performed By EFSI Under The Contract.**

The single issue upon which EFSI seeks summary judgment in this cross motion is whether the Government may shirk its obligation to pay (or to credit) EFSI for the utility upgrade work EFSI performed under the Contract, which the Government received and continues to use and enjoy to this day. In its MSJ, the Government has attempted to justify the windfall it seeks by improperly and unreasonably narrowing the focus of its analysis to a single phrase of a single clause in the Contract at issue, while at the same time ignoring the remaining terms of the Contract with which that phrase must be interpreted.

In its MSJ, the Government implicitly invites this Court to ignore the long-recognized obligation of the Government, an obligation grounded solidly in both fairness and the law, to pay for services, goods, and other work items that have been provided by a defaulted contractor when those goods, services, and other work items met the requirements of the contract and were received and enjoyed by the Government. This fundamental obligation is embodied not only in numerous provisions and clauses in the FAR, but also in the substantial and consistent body of federal government contract case law establishing the responsibilities of contracting parties, and in the exception that the Government itself has identified to the usual rule that recovery by a contractor under *quantum meruit* is outside the jurisdiction of this Court.

As demonstrated below, the Government's refusal to recognize any obligation to pay or otherwise credit EFSI for the Fort Hamilton utility upgrade work is insupportable. The Government is obligated to compensate EFSI for the Fort Hamilton utility upgrade

work performed by EFSI prior to the termination of the Contract under any of four approaches: 1) by operation of the Termination Liability clause expressly included in the Contract (Clause 652.241-10[2]) ; 2) by operation of the Default clause expressly included in the contract (FAR 52.249-8); 3) by operation of the construction provisions, including the Default clause (FAR 52.249-10), that the Government itself has argued must be read into the Contract through invocation of the *Christian* doctrine; or 4) under the terms of an implied-in-fact contract for payment of these costs upon early termination of the contract for any reason.

Although the amount of payment due to EFSI from the Government might vary based on the specific approach used, the obligation of the Government to pay EFSI for the work arises regardless of the legal basis actually utilized. By this Motion, EFSI only requests that this Court confirm the instant application of the unremarkable, and until this case, uncontroversial proposition that the Government must pay for work performed under a contract, even when the contract is terminated for the contractor's default, when, as here, it has received, utilized, and enjoyed the benefits of that work.

Each of the approaches based upon the express Contract between the parties is discussed in detail below.

**1. The Termination Liability Clause Requires The Government To Pay EFSI For The Improvements Made By EFSI To The Fort Hamilton Utility Systems Under The Contract.**

In its MSJ, the Government argues that a prefatory phrase in FAR 52.241-10 (the Termination Liability clause), the same clause that was expressly included in the terms of

[2] Amendment 0003 of the Solicitation added clause 652.241-10 – Termination Liability (Feb 1995) to Section I. *See* Plaintiffs' App. at 21-23. The addition of a "6" in the number of the clause appears to have been a typographical error. *See* Contract, ¶ H.8.

the Contract by the Government, and the same clause that was expressly referenced in the Technical Proposal that EFSI submitted and the Government incorporated into the Contract, renders the clause ineffective in these circumstances. *See* MSJ at 11. Notably, the Government has not argued that since the guidance contained in the FAR concerning the circumstances under which the clause should be used were different from the circumstances in this case, the parties could not agree to use the clause, more specifically, the methodology contained within the clause, to govern their respective rights in the event of a termination of the Contract prior to the end of the time period on which the price (and the payment stream) was calculated. As demonstrated below, the terms of the Contract and the contemporaneous actions of the parties prior to and at contract award require the rejection of the Government's interpretation, and the argument based on that interpretation.

**a. Use Of The Termination Liability Clause Was Both Authorized And Appropriate For This Contract.**

Paragraph H.8 of the Contract incorporates the Termination Liability clause, FAR 52.241-10. Contract, ¶ H.8. In its MSJ, the Government's argument that the Termination Liability clause is inapplicable in these circumstances relies upon the prefatory language of subparagraph (a) of the clause: "(a) If the Government discontinues utility service under this Contract before completion of the facilities cost recovery period …." MSJ at 11. Based solely on that language, the Government asserts that the Contract must be interpreted to restrict the use of the clause to only the specific situation in which the Government has no requirement for additional utility services. *See id.*

As demonstrated below, the Government's interpretation, and the argument based on that interpretation, fails for two reasons: 1) the FAR does not restrict the use of the

clause as does the Government's litigation position; and 2) the Government's proffered interpretation would render other clauses in the Contract "useless, inexplicable, inoperative, void, insignificant, meaningless, [or] superfluous" and would "achieve[] a weird and whimsical result." *Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 459 (2001).

**1) The FAR Did Not Prevent The Use Of The Termination Liability Clause Here.**

Guidance pertaining to use of the Termination Liability clause is contained in FAR Part 41. The FAR defines the term "termination liability" as "a contingent Government obligation to pay a utility supplier the unamortized portion of a connection charge and any other applicable nonrefundable service charge as defined in the contract in the event the Government terminates the contract before the cost of connection facilities has been recovered by the utility supplier." FAR 41.101. Under FAR 41.501(d), the Termination Liability clause is used "when payment is to be made to the contractor upon termination of service in conjunction with or in lieu of a connection charge upon completion of the facilities." FAR 41.501(d)(4).

Rather than establishing an absolute *prerequisite* for use of the clause, however, the prescriptive FAR clause actually provides the contracting officer with flexibility in the method(s) to be used for payment to a contractor for capital improvements made to Government utility systems. Neither the FAR nor the Contract limits or defines the term "termination of service" as used in this context. Moreover, the reference to a connection charge in FAR 41.501(d)(4), merely lists another method by which a contractor could be compensated for its capital improvements upon termination. Thus, the reference is irrelevant to this analysis. Finally, FAR 41.501(d) does not contain any provision that

would preclude the parties from agreeing, as they did, to use the Termination Liability clause in this Contract to establish the methodology to calculate the payment due to the contractor for the unamortized portion of its capital upgrade price upon the termination or expiration of the Contract.

**2) The Contract Reflects The Parties' Intent That The Termination Liability Clause Would Be Used To Govern The Rights Of The Parties In The Event Of Early Contract Termination.**

The express terms of the Contract reflect the parties' agreement to use the Termination Liability clause if the Contract ended before its term. Paragraph H.8 Termination Liability, states directly: "The *termination liability* of the parties with respect to the provision of electric, natural gas, potable water and wastewater utility service under this contract *shall be based upon FAR 52.241-10 Termination Liability (Feb 1995)*. See Section I, Contract Clauses." Contract, ¶ H.8 (emphasis added). This clause also fails to limit the type of termination to which the Termination Liability clause applies. Further, it clearly indicates that the methodology for calculating the termination liability will be "based upon" FAR 52.241-10.

Moreover, other Contract terms are meaningful, operative, and consistent only if the Termination Liability clause is interpreted to be applicable regardless of the type of contract termination. First, the Contract clauses invoking the Termination Liability clause do not limit the scope or circumstances of its applicability in the manner urged by the Government. Paragraph C.4.7 Disposition Upon Expiration or Termination, provides that

> *Upon expiration or termination of this contract*, the Government shall have the option to negotiate a sole source contract with the Contractor or reacquire the facilities as described in Section H. Reacquisition of the

> utility facilities will be performed only when it is determined to be in the best interest of the Government. . . . *The Contractor's unrecovered investment will be determined as set forth in Paragraph H.8, Termination Liability*. See also *Termination for Default, Termination for the Convenience of the Government, and Termination Liability*, in Section I, Contract Clauses.

Contract, ¶ C.4.7 (emphasis added). Indeed, if the Termination Liability clause were to be applied as suggested by the Government, the reference to the three Section I clauses would be rendered meaningless, or at best redundant. The only reasonable interpretation is that the Termination Liability clause will be used to pay the contractor's unrecovered capital investment regardless of the circumstances under which the contract is ended, whether by expiration or any type of termination.

Second, paragraph B.2.1 of the Contract provides that a component, called the Annual Initial Upgrade, of the monthly payment to be made by the Government consists of the contractor's initial capital investment price for system improvements, amortized over the contract term at an annual interest rate, and divided into 120 equal "installments." Contract, ¶ B.2.1, Plaintiffs' Proposed Findings of Uncontroverted Fact ("PFUF"), ¶ 10. The use of the concept of amortization, rather than the concept of a service payment, indicates that the amount being paid under the Annual Initial Upgrade component was a debt presently owed by the Government to the contractor for the performance of the system upgrades, but to be paid over the contract term. Moreover, the accrual of interest on this debt is consistent with this characterization. If the price of the upgrades was not a debt presently owed by the Government to EFSI, there would have to be some other basis upon which the payment of interest could be justified.

Third, application of the Termination Liability clause to govern payment of EFSI's unamortized capital investment in the utility system upgrades is consistent with

other provisions of the Contract which establish or reflect EFSI's ownership interest in, and right to compensation for the work. Under the Contract, title to the utility systems was to pass to EFSI at, or shortly after award. PFUF, ¶ 6. Paragraph C.4.7 reflects that the Government, upon expiration or termination of the Contract, would decide whether to *reacquire* the utilities from EFSI. Thus, under the Contract, the Government would be required to determine a value at which it would reacquire title to the utility systems from EFSI, regardless of the reason for, or type of contract termination. The Termination Liability clause, which paragraphs C.4.7 and H.8 invoke without limitation of the type of termination of the Contract, provides the methodology for that determination.

The use of the Termination Liability clause in the instant circumstances is also completely consistent with the risk structure established by, and reflected in the Contract. EFSI proposed to assume "all of the financial risk associated with delivering reliable service." Plaintiffs' App. at 10 (EFSI Final Cost Proposal, ¶ 1.1, p. 3). For example, the specific financial risks EFSI undertook included the risk of obtaining sufficient funding to perform the upgrades in the first year of the contract ("Capital/Financing"), the risk that the improvements might cost EFSI more to make than it had anticipated when it priced them in its fixed-price proposal ("Cost Control"), and the risk that over the course of the contract term the market interest rate might vary from the interest rate EFSI used to calculate the price of those improvements ("Interest Rate Changes"). *See* Plaintiffs' App. at 10 (EFSI Final Cost Proposal, ¶ 1.1, p. 3 (Figure 1. Risks Transferred)). No provision of either EFSI's Technical Proposal or the Contract puts EFSI's capital investment in the utility at risk of forfeiture to the Government if EFSI does not compete the entire term of the Contract. On the contrary, as demonstrated throughout this Section I, the Contract,

which includes EFSI's proposal, protects EFSI's right to payment for its upgrades and improvements to the Fort Hamilton utility systems under these circumstances.

In its Final Technical Proposal, EFSI expressly stated that "[i]n the event the contract is terminated, the Contractor shall be granted compensation for its capital costs in accordance with FAR 52.241-10 (Termination Liability) and for all its other costs in accordance with FAR 52.249-2 (Termination for Convenience)." *See* Plaintiffs' App. at 18 (EFSI Cost Proposal, Final Proposal Revision, Proposal Assumptions and Clarifications).

The Government expressly agreed to the specific terms of EFSI's proposal, including the provisions in EFSI's Technical Proposal invoking the Termination Liability clause in the event of termination for any reason, by incorporating EFSI's Final Technical and Price Proposals into the Contract without modification or limitation. *See* SF33, Solicitation, Offer and Award, Contract No. DACA51-00-C-0001, December 2, 1999, Continuation Sheet, page 1A, Government App. at 19. There could have been only one logical purpose for the parties' actions: to provide an agreed-upon methodology to pay EFSI for its capital upgrades and improvements if the extended payment schedule period contained in the Contract was shortened as a result of termination of the Contract. There is absolutely no evidence in EFSI's Technical Proposal, or in any other provision of the Contract, that either EFSI or the Government expected that EFSI's capital investment in the utility systems at Fort Hamilton would be forfeited by EFSI to the Government should the Contract be terminated for any reason prior to the end of its term.

The contemporaneous intentions of both the Government and EFSI with respect to early termination of the Contract for any reason are reflected expressly and

unambiguously by the Government's inclusion of the Termination Liability clause in the Contract, by EFSI's statement in its Final Proposal of its reliance upon the operation of that clause upon early termination, and by the Government's express incorporation of EFSI's proposal into the Contract. Moreover, EFSI's interpretation of the scope of the Termination Liability clause is consistent with other provisions and the overall risk structure of the Contract. The contrary positions taken by the Government since this dispute has arisen do not and cannot reconcile these express contract provisions. Indeed, there is neither an express indication, nor even a hint, in the Contract documents or elsewhere that EFSI agreed to forfeit its right to reimbursement for the capital improvements it performed under the Contract if the Contract were terminated early under any circumstances, or that the Government expected it to do so.

**b. The Applicability And Terms Of The Termination Liability Clause Were Negotiated And Agreed To By The Parties.**

In its COFD, the Government argued that the Termination Liability clause would only apply if the parties had "negotiated" the terms to be inserted into the blank portions of the clause and that the parties had failed to do so. COFD at 3-4. The Government's argument, which is based solely on parenthetical statements in the body of the Termination Liability clause, unduly restricts the definition of "negotiation" and ignores the fact that the information necessary to fill in the blanks of the clause was negotiated and agreed by the parties. Indeed, based on the provisions of the Contract and the information contained in EFSI's Final Proposal, which the Government incorporated into the Contract, there was no need for the parties to negotiate further with respect to either the formula that would govern the payment that would be due to EFSI under the

Termination Liability clause in the event of early termination of the Contract or the data that would be used to complete that formula.

In its Final Proposal, EFSI identified the price of the improvements it proposed to make to the Fort Hamilton utility systems on a fixed price basis ($11,616,000), applied a financing charge (interest) at a rate of 8% per annum, and extended the Government's payments over the term of the Contract (10 years). *See* Plaintiffs' App. at 16-17. This resulted in a monthly price of $140,932 (annual payment of principal and interest for the utility system upgrades in the amount of $1,691,180) and the timeframe over which it expected the Government to pay for those improvements. *See id.* at 16.

Essentially, these terms constituted EFSI's "negotiating position" with the Government concerning termination liability. As demonstrated below, EFSI's proposal, which was accepted by the Government and incorporated into the Contract, provided all of the information necessary to complete the blanks in paragraphs (b), (c) and (d) of the Termination Liability clause. The last remaining portion of the clause, paragraph (e), could not be completed until the date of termination was known.

> (b) Facility cost recovery period. The period of time, not exceeding the term of this contract, during which the net cost of the new facility shall be recovered by the Contractor is _____ months. (To be negotiated).

EFSI proposed, and the Government accepted a cost recovery period coextensive with the term of the contract. Thus, the entry for this paragraph is **120 months**.

> (c) Net facility cost. The cost of the new facility, less the agreed upon salvage value of such facility, is $_____. (To be determined).

Under the Contract, the Government agreed to pay EFSI a firm-fixed price for the utility system upgrades and replacements. At the conclusion of the Contract, title to the utilities was to pass back to the Government, obviating the need to assess or deduct

salvage value of the facility. After termination of the Contract, the Government took possession and control of the upgraded utility systems and is currently using those systems. Therefore, no salvage value will accrue to EFSI and there is no need for a salvage value adjustment. As a result, the "Net facility cost" is the price the Government agreed to pay EFSI for its installation. Thus, the entry for this paragraph is **$16,911,800**.

> (d) Monthly facility cost recovery rate. The monthly facility cost recovery rate which the Government shall pay the Contractor whether or not the service is received is $ _____ . (Subparagraph c divided by subparagraph b).

> By simple mathematics, the entry for this paragraph is **$140,931.67**.

> (e) Termination charges. Termination charges = $ ____. (The remaining months of the facility's cost recovery period (subparagraph (b)[)] multiplied by subparagraph (c)[sic][)].[3]

This paragraph could only be completed after the date of termination of the contract became known. In this case, the last payment the Government made to EFSI was for October 2001. There were 101 months remaining in the term of the Contract. Thus, by simple mathematics, the Government owes EFSI the amount of $14,234,098.67. Some adjustment of this entry is required, and would have been required regardless of the type of termination, to subtract interest that was included in the facility price under paragraph (c) of the clause, but unearned as of the date of contract termination. Use of the amount of unamortized principal in paragraph (c), as reflected in the certified claim, would provide the appropriate recovery amount under the Termination Liability clause formula.

---

[3] Notwithstanding the literal language of the clause, to complete this entry at contract termination, the remaining months of the period in subparagraph (b) should be multiplied by subparagraph (d).

By awarding the Contract to EFSI and incorporating EFSI's Technical proposal into the Contract, the Government accepted the "negotiation position" EFSI asserted in that proposal. Consequently, if there is any requirement for "negotiation" between the parties as a prerequisite to the effectiveness of the Termination Liability clause, that requirement was satisfied through the actions of the parties in the events that resulted in the execution of this Contract.

**2. The Termination For Default Clause In The Contract Requires The Government To Pay EFSI For The Utility Systems Improvements Made And Services Provided By EFSI Under The Contract.**

The Contract contains FAR 52.249-8, Default (Fixed-Price Supply and Service). Under the terms of that clause, the Government is required to pay EFSI for the improvements made by EFSI to the Fort Hamilton utility systems and the operations and maintenance services provided and invoiced by EFSI under the Contract. *See* FAR 52.249-8(f). Specifically, FAR 52.249-8(f) provides that Government is to pay the contractor for accepted supplies and services, notwithstanding the contractor's default.

Under the undisputed facts of this case, it is not necessary to establish that the Government formally accepted the utility systems upgrades and the operations and maintenance services provided and invoiced by EFSI. The facts establish that the Government, by its actions, has impliedly accepted both the utility systems upgrades and improvements that were performed by EFSI under the Contract, as well as the operations and maintenance services that were provided by EFSI. *See John C. Kohler Co. v. United States*, 204 Ct. Cl. 777 (1974) (Government held to have impliedly accepted boiler and was required to bear loss from boiler explosion where Government had custody of and operated boiler over prolonged period of time); Complaint, Exh. 1 (EFSI's Certified

Claim) at 9-11. Additionally, the Government has admitted in its COFD that EFSI is entitled to full payment under the Contract for its unpaid November 2001 invoice, but is delaying that payment until it is determined whether payment of the retained balance must be made to EFSI or to Liberty Mutual Insurance Company. Complaint, Exh. 2 (COFD), at 6. Consequently, the Government is liable to EFSI under both Counts I and II on this basis.

**3. If, As The Government Itself Previously Argued, The Contract Was Required To Contain Clauses Appropriate For Construction, The Government Still Must Pay EFSI For The Improvements Made By EFSI To The Fort Hamilton Utility Systems Under The Contract.**

In its COFD, the Government argued that this Contract required segregable construction services and thus required the contracting officer to include construction clauses for the construction work. *See* COFD at 5 (citing FAR 36.101(c)). According to the Government, the Contract was required to include the default clause appropriate for construction, i.e., FAR 52.249-10, Default (Fixed-Price Construction) (the "Default - Construction clause"). *See* COFD at 5; FAR 49.504(c)(1). Consequently, the Government argued, that clause will be incorporated into the Contract by operation of law, regardless of the contracting officer's failure to include the clause in the contract. *See* COFD at 5 (citing *G.L. Christian and Assoc. v. United States*, 160 Ct. Cl. 58 (1963)). Thus, the Government has argued, for the portion of the Contract requiring construction services, i.e., the upgrades and improvements to the Fort Hamilton utility systems performed by EFSI under the contract, the default clause appropriate for construction is applicable.

Under the Default - Construction clause, the Government continued, there is no express provision mandating that EFSI be paid for work performed before the default.

COFD at 5. Thus, the Government argued, were the Contract to be enforced as selectively redrafted by the Government, upon termination of the Contract for default, EFSI would forfeit any right to payment for construction it actually performed prior to the termination, despite the fact that the construction was substantially complete. COFD at 5.

The Government's argument fails for two reasons. First, even if the Default - Construction clause is incorporated into the Contract, the courts have recognized a defaulted contractor's right to payment or credit for work that was performed prior to the termination. Consequently, if the inclusion of the clauses appropriate for construction is actually required under the *Christian* doctrine, as the Government argued in its COFD, those clauses provide yet another basis supporting EFSI's claim for payment for the utility upgrade and improvement work. Second, if the *Christian* doctrine requires the incorporation of the Default - Construction clause into this Contract, it also requires the inclusion of other related construction clauses, including FAR 52.232-5, Payments Under Fixed-Price Construction Contracts (the "Payments clause"). Under that clause, EFSI would be entitled to payment for the completed work.

Each of these issues are addressed below.

**a. The Default Clause For Construction Requires The Government To Pay EFSI For The Utility Upgrades And Improvements.**

The Government's reliance upon the Default - Construction clause in its COFD to avoid its obligation to pay EFSI for utility upgrade and improvement work performed prior to the date of the termination of the Contract is misplaced. Even if the clause is incorporated into the Contract under the *Christian* doctrine, this Court has long recognized the right of a defaulted construction contractor to payment for the contract

value of work performed prior to the termination, offset only by the costs to the Government caused by the default, e.g., the costs of completing the work.

Under the express terms of FAR 52.249-10, the Government may terminate the contractor's *right to proceed* with the work (or separable portion of the work) that has been delayed due to the fault of the contractor. *See* FAR 52.249-10(a). Termination of the contractor's right to proceed does not extinguish the contractor's right to payment (or to a credit against any liability for damages to the Government in the Government's efforts to complete the work) for work performed by the contractor prior to the default. *See PBI Elec. Corp. v. United States*, 17 Cl. Ct. 128, 137 (1989) ("While the default termination clause allows the Government to use unpaid progress payments or retainage to offset excess reprocurement costs, it does not release the Government generally from its obligation to the contractor for the contract value of work completed to the date of termination."). "[P]rogress payments due for work completed prior to termination of the right to proceed shall be used for the purpose of liquidating the liability of the contractor and his surety to the Government …. [I]f no damages resulting from the default are proven, any unpaid progress payments due on work performed prior to termination must go to the contractor. Otherwise, the Government would receive a windfall." *Id.* at 137 n.9 (citations omitted).

Indeed, if, as the Government has argued, the contract is segregable such that the construction clauses are read into the contract under the *Christian* doctrine, the appropriate response to Enron's failure to continue performance of the construction portion of the contract would have been to terminate EFSI's right to proceed with the remaining utility upgrade work:

> [T]he legally supportable and sensible approach appears to be to simply follow the language of the FAR and the contract and to allow the Government to terminate the "separable portion" of the contract, the separable portion being the uncompleted work. *See* 48 C.F.R. § 52.249-10(a)(1990). The result is to prevent the Government from avoiding its obligation to pay provable monies owed on the contract, while allowing an appropriate reduction for the uncompleted work and any consequences normally associated with a default termination on that portion of the contract the plaintiff refused to perform.

*PCL Constr. Serv., Inc. v. United States*, 47 Fed. Cl. 745, 810 (2000).

**b. Other FAR Construction Clauses Require The Government To Pay EFSI For The Utility Upgrades, Or Reflect That Requirement.**

Under FAR 52.232-5, Payments Under Fixed-Price Construction Contracts ("the Payments clause"), which is also required by the FAR to be included in construction contracts, *see* FAR 31.111(a)(5), a fact that was ignored by the Government in its COFD analysis, title to materials and work performed under a construction contract does not pass to the Government until payment is made by the Government. *See* FAR 52.232-5(f). Consequently, although the Termination for Default clause may not affirmatively state that EFSI is entitled to payment (or credit) for the work it has performed prior to default, the Payment clause indicates that EFSI still retains title to the materials and work for which the Government has yet to make payment, providing another basis, consistent with caselaw interpreting these FAR provisions, supporting recovery by EFSI for the improvements and upgrades it made to the Fort Hamilton utility systems.

Several other FAR provisions also recognize that the defaulting construction contractor is entitled to payment (or credit) for work performed prior to the default. FAR 49.404(d) references the contractor's "unpaid prior earnings (retained percentages and unpaid progress payments)" and "the defaulting contractor's residual rights, including

assertions to unpaid prior earnings." FAR 49.404(d). FAR 49.404(e)(1) & (3) recognizes a defaulted contractor's rights in unpaid prior earnings. *See* FAR 49.404(e). FAR 49.406 directs the contracting officer to use a defaulting contractor's unpaid earnings to satisfy any liabilities to the Government before taking any additional steps to recover additional damages from the contractor or its surety. *See* FAR 49.406. Consequently, the basis proffered by the Government as the basis for its rejection of EFSI's certified claim is not only wrong, but actually supports EFSI's claim.

Based on the foregoing, even if the Contract had been drafted under the principles the Government would now apply to modify it, the Government cannot not escape its responsibility to pay for the work it requested, received, and is using to this very day. The Government's argument to the contrary is meritless, and the result it seeks is manifestly unjust.

## II. Defendant Is Not Entitled To Summary Judgment On Counts I And II of EFSI's Complaint.

### A. To Prevail In Its Motion For Summary Judgment, Defendant Must Demonstrate That There Are No Facts Or Legal Theories Upon Which EFSI Can Prevail.

RCFC 56(c) provides that summary judgment shall be rendered to a moving party where:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

RCFC 56(c); *see also* FED. R. CIV. P. 56(c) (identical language). Moreover, "to prevail at the summary judgment stage, the moving party must show that there are no genuine issues of material fact and that no reasonable jury could find against the moving party.

Further, at the summary judgment stage, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Defendant has failed to meet this standard. Not only has the Government urged an unreasonably formalistic and unsupported interpretation of the contract (i.e., that the Termination Liability clause is inapplicable), but it also cannot establish that EFSI is unable to prevail on any other theory of recovery supported by the facts pleaded in EFSI's Complaint.

**B. Defendant's Interpretation Of The Termination Liability Clause Is Unreasonable And Insupportable.**

The same facts and analysis that support granting plaintiffs' cross motion for summary judgment, discussed in detail in Section I-B-1 above, militate against a finding that the Government's proffered interpretation of the Contract is reasonable and valid. The Government supports its argument by focusing solely and narrowly upon the prefatory language contained in paragraph (a) of the Termination Liability clause. The Government ignores, however, other express provisions of the Contract, the context within which the Contract was solicited, the express conditions under which EFSI's proposal was submitted, and the incorporation of EFSI's proposal into the Contract without modification or limitation by the Government.

As demonstrated above, *see* I-B-1, the Government's interpretation of the role of the Termination Liability clause in this Contract would not only conflict with other provisions of the Contract, but also with the overall risk structure established by that Contract. Moreover, contrary to the fundamental principle permeating federal procurement law that the Government "pays for what it gets," the Government would

reap a windfall by retaining and continuing to use the substantial benefits of EFSI's work to upgrade and improve the utility systems at Fort Hamilton without compensating or crediting EFSI for that work. Notably, the Government has not identified, nor can it identify anything in the Contract or in the contemporaneous actions of the parties to that Contract that would support the Government's currently intended result. Consequently, the Government's MSJ must be denied.

**C. Even If, Arguendo, Defendant's Interpretation Of The Termination Liability Clause Is Correct, EFSI Can Prevail Upon Other Theories Of Recovery Based On The Facts Pleaded By EFSI In Its Complaint.**

To prevail in a motion for summary judgment,

> [t]he [summary judgment] movant must … demonstrate that the applicable controlling law requires a decision in the movant's favor. Conversely, to defeat summary judgment, the nonmovant must articulate a viable legal theory entitling it to relief should it prevail on the facts at trial.

11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE 3D ¶ 56.11[8] (3d ed. 2006). Even if, arguendo, the Termination Liability clause is determined to have been intended by the parties to be of such limited application as the Government asserts, the Government has failed to demonstrate that EFSI cannot prevail upon other theories justifying recovery under Counts I and II that arise from the facts pleaded by EFSI in its Complaint and the reasonable inferences therefrom, including a legal theory arising from the Government's own assertions in its COFD. As discussed in detail above, those theories include recovery based on FAR 52.249-8, the default clause expressly included in the contract, *see* I-B-2 above; 2) FAR 52.249-10, the default clause for construction that, in its COFD, the Government would incorporate into the Contract by operation of law *see* I-B-3 above; or 3) *quantum meruit*, under an implied-in-fact contract theory, as asserted by EFSI alternatively in Counts 3 and 4 of the Complaint. *See* III below.

Consequently, the defendant has not, and cannot prevail in its motion for summary judgment.

## III. This Court Has Jurisdiction Over EFSI's Alternative *Quantum Meruit* Claims Under The Implied-In-Fact Contract Exception.

In its MTD, the Government asserts, pursuant to RCFC 12(b)(1), that this Court lacks subject matter jurisdiction over EFSI's *quantum meruit* claims. The sole issue before this Court requiring resolution is whether EFSI's factual allegations, taken as true and construed in the light most favorable to EFSI, entitle it to offer evidence to support its claims. *See Forest Products Northwest, Inc. v. United States*, 62 Fed. Cl. 109, 120 (2004) (Block, J.) (citing cases). Since the Tucker Act gives the Court of Federal Claims jurisdiction over "any express or implied contract with the United States," *see* 28 U.S.C. § 1491 (2000), to the extent that EFSI has alleged facts that would establish an implied contract with the United States, this Court has jurisdiction to hear EFSI's claim.

### A. This Court Has Jurisdiction Over *Quantum Meruit* Claims Based Upon An Implied-In-Fact Contract Between The Government And The Contractor.

As the Government must, and does, admit in its MTD, this Court possesses and has exercised jurisdiction over a subset of *quantum meruit* claims, i.e., *quantum meruit* claims that are based on the existence of an implied-in-fact contract between the Government and a contractor. *See* MTD at 8-9. In such cases, this Court has held that where a contractor has established the existence of an implied-in-fact contract, the principles of *quantum meruit* will be utilized to quantify recovery, i.e., to establish the value of the goods or services delivered and accepted by the Government. Moreover, the fact that an express contract exists between the parties is no bar to finding that an implied

contract existed between the parties to govern a material portion of the contract that is determined to be inapplicable or unenforceable.

As demonstrated below, the facts of this case fall squarely within an exception to the general rule that where there is an express contract between the parties, an implied-in-fact contract will not be found. If the Termination Liability Clause in the express contract between the parties is determined to be inapplicable or unenforceable on the formalistic basis urged upon this Court by the Government, and no other clause in the Contract provides the relief requested by EFSI, the facts pleaded by EFSI, together with the inferences drawn therefrom, assert the existence of an implied-in-fact contract to reimburse EFSI in the event of an early termination of the Contract. Consequently, this Court may exercise jurisdiction over EFSI's *quantum meruit* claim.

**1. This Court May Grant A Contractor *Quantum Meruit* Recovery Where The Underlying Contract Is Implied-In-Fact.**

The cases cited by the Government in its MTD stand not for the proposition that a plaintiff can never recover *quantum meruit* relief, but only for the proposition that this Court does not possess jurisdiction over claims based upon facts that allege only a contract implied-in-law. *See e.g. Perri v. United States*, 340 F.3d 1337, 1343 (Fed. Cir. 2003). A plaintiff can recover, however, the reasonable value of goods or services rendered on a *quantum meruit* or *quantum valebant* basis, under an implied-in-fact contract theory. *See United States v. Amdahl*, 786 F.2d 387, 393 (Fed. Cir. 1986); *Urban Data Sys., Inc. v. United States*, 699 F.2d 1147, 1154 (Fed. Cir. 1983); *Fluor Enter., Inc. v. United States*, 64 Fed. Cl. 461, 495-96 (2005); *Gold Line Ref., Ltd. v. United States*, 43 Fed. Cl. 291, 295 (1999) ("The Court of Appeals for the Federal Circuit has recognized

the equitable remedy of *quantum meruit* as a basis of recovery under an implied-in-fact contract.").

As demonstrated below, EFSI's alternative claims for relief under *quantum meruit* fall well within this rule. EFSI's alternative claims seek the reasonable value of services that were provided to, received and enjoyed by the Government, based on an implied-in-fact contract that fills the void created should the payment mechanisms in the express contract, e.g., the Termination Liability clause or the default clause(s), be determined to be inapplicable or unenforceable. Consequently, should it be necessary to reach EFSI's alternative claims, this Court possesses jurisdiction to resolve those claims.

**2. This Court Has Recognized And Enforced An Implied-In-Fact Contract Where An Express Contract Between The Parties Contains A Defective Clause.**

Notwithstanding the general rule that where there is an express contract, an implied-in-fact contract will not be found, *see Atlas Corp. v. United States*, 895 F.2d 745, 754 (Fed. Cir. 1990), *cert. denied*, 498 U.S. 811 (1990), where an express contract fails to contain a substantive provision regarding a material right of the parties, the Court may find that an implied-in-fact contract exists regarding that provision. *See Barrett Ref. Corp. v. United States*, 242 F.3d 1055, 1060 (Fed. Cir. 2001). In addition, where a portion of an express contract between the parties is defective or unenforceable, this Court and the Federal Circuit have held that an implied-in-fact contract existed with respect to the defective provisions. *See Urban Data Sys., Inc.*, 699 F.2d at 1154 (finding implied-in-fact contract where it was "plain that only the price terms of the two subcontracts were invalid – not any other part of those agreements"); *Gold Line Ref., Ltd.*, 43 Fed. Cl. at 294 ("As a matter of law, the court concludes that Gold Line's

contract with DFSC, to the extent not express, is implied-in-fact and is subject to this court's jurisdiction"). Thus, where, as here, the defendant has argued that a portion of EFSI's contract, i.e., the Termination Liability clause, is inapplicable or unenforceable such that the Contract fails to address certain rights of the parties upon termination, this Court may exercise jurisdiction based on an allegation that an implied-in-fact contract existed between the parties with respect to that subject matter.

Defendant's MTD expressly admits that an implied contract will be found where "the plaintiff provided goods or services to the Government pursuant to an express contract, but the Government refused to pay for them because of defects in the contract that rendered it invalid or unenforceable." MTD at 9 (citing *Perri*, 340 F.3d at 1344). Defendant asserts, however, that the facts alleged by EFSI fail to fit within this rule. *See* MTD at 9. The circumstances under which this rule is applied, however, reflect the situation confronting EFSI in this case. Although an express contract exists between the parties, the defendant has argued in its COFD that since certain information was not inserted at the appropriate places in the text of the Termination Liability clause, the absence of that information renders the clause inapplicable or unenforceable. In its MSJ, the defendant has asserted an even broader argument – that the prefatory language in the clause renders the Termination Liability clause inapplicable. Consequently, if either of defendant's arguments were to prevail, the existence of an express contract between the parties does not prevent a finding by this Court that an implied-in-fact contract existed between the parties regarding the payments that would be made to EFSI for work performed under that express contract upon termination of that contract for default.

### B. EFSI's Alternative *Quantum Meruit* Claims Arise From An Implied-In-Fact Contract Under Which The Government Promised To Pay EFSI For The Utility System Upgrades If The Contract Was Terminated For Any Reason.

The requirements for a binding implied-in-fact contract with the United States are identical to the requirements for an express contract with the United States. Namely, one must show mutual intent, offer, acceptance, consideration, and authority to contract. *See Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997); *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990), *cert. denied*, 501 U.S. 1230.

EFSI's Complaint alleges sufficient facts to establish the existence of an implied-in-fact contract under which the requested relief may be granted. Specifically, EFSI has alleged that: 1) the Government and EFSI intended to enter into a contract (Complaint ¶¶ 4-14); 2) the contract was the result of an offer by EFSI (Complaint ¶ 6); 3) EFSI's offer was accepted by the Contracting Officer (Complaint ¶ 7); 4) mutual consideration was exchanged by the parties in the form of a promise of work to be performed in return for a promise to pay for that work (Complaint ¶¶ 8-10); and 5) the Contracting Officer possessed the requisite authority (inferences reasonably drawn from allegations in Complaint, ¶¶ 4-7, 13, 16-18, 25-26, 32-33).

EFSI's Complaint also alleged sufficient facts to establish that the parties agreed that EFSI would be paid for the utility system upgrades and operations and maintenance services it provided to the Government under the Contract, even if the Contract was terminated before the end of its term. *See* Complaint ¶¶ 11-13, 17-18, 27-28. Consequently, notwithstanding the inclusion of the words "unjust enrichment" in the title of Counts 3 and 4, the facts pleaded by EFSI and the assertions in Counts 3 and 4 provide a sufficient basis to proceed with those claims. *See generally* Complaint ¶¶ 43-58.

**C. Alternatively, EFSI Should Be Allowed To Amend Its Complaint To Correct Any Deficiencies In Its Pleading.**

Alternatively, if the allegations in Counts 3 and 4 of EFSI's pleadings are insufficient to allege the existence of an implied-in-fact contract as a prerequisite to the assertion of its right to recovery of its costs under a *quantum meruit* valuation methodology, or in any other manner, EFSI should be granted leave to amend its complaint to correct any such deficiencies. RCFC 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." RCFC 15(a). This determination is within the sound discretion of the trial court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). In this case, justice requires that EFSI be allowed to make minor changes to its pleadings to allow it a fair opportunity to test its claim on the merits. No reason exists to deny EFSI the opportunity to amend its complaint, especially where the Government has been on notice of the basis for EFSI's claims and would reap a windfall should EFSI not be allowed to proceed with those claims, if necessary.

## CONCLUSION

For the reasons set forth above, this Court should grant plaintiffs' cross motion for summary judgment, deny the defendant's motion for summary judgment on Counts I and II of EFSI's Complaint, and deny the defendant's motion to dismiss Counts 3 and 4 of EFSI's Complaint. By doing so, this Court will affirm the fundamental principle that the Government must pay (or credit) a defaulted contractor for work it has received from that contractor, where the Government retains and uses that work for its own benefit. Specifically, this Court should find that the Government is liable to EFSI for the improvements to the Fort Hamilton utility systems that were performed by EFSI under

the Contract under one or more of the following bases: 1) the Termination Liability clause; 2) the Default clause expressly contained in the Contract; or 3) the FAR construction clauses that could be incorporated into the Contract by the Christian doctrine. Finally, this Court should allow EFSI to proceed with its alternative basis for relief, and thereby allow EFSI the opportunity to demonstrate the existence of an implied-in-fact contract to compensate EFSI for the costs of the capital upgrades and improvements to the Fort Hamilton utility systems performed by EFSI under the express Contract, should the express Contract be determined to lack an express basis for recovery of those costs.

Respectfully submitted,

June 2, 2006

/s/ John J. Pavlick, Jr.

John J. Pavlick, Jr.
VENABLE LLP
575 7th Street, N. W.
Washington, D. C. 20004
Telephone: 202/344-4000
Facsimile: 202/344-8300

OF COUNSEL
Charles R. Marvin, Jr.
VENABLE LLP
575 7th Street, N. W.
Washington, D. C. 20004
Telephone: 202/344-4000
Facsimile: 202/344-8300

Attorneys for Enron Federal Solutions, Inc.

/s/ Timothy J. Heffernan

Timothy J. Heffernan
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.

7929 Westpark Drive, Suite 400
McLean, Virginia 22102
Telephone 703/749-1000
Facsimile: 703/749-0699

Attorney for Liberty Mutual Insurance Co.

June 2, 2006

DC1/207198.08

NOTICE OF FILING

I hereby certify that on June 2, 2006, a copy of the foregoing "PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFFS' (EFSI'S) COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John J. Pavlick, Jr.