**No. 05-1000C (04-254C) (Consolidated)**
**(Judge Block)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ENRON FEDERAL SOLUTIONS, INC., et al.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF ENRON FEDERAL SOLUTIONS, INC.'S COMPLAINT AND DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**DONALD E. KINNER**
**Assistant Director**

**JOHN WARSHAWSKY**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor, 1100L Street, N.W.**
**Washington, D.C. 20530**
**Telephone: (202) 307-0010**
**Attorneys for Defendant**

**OF COUNSEL:**

**CAPTAIN PATRICK BUTLER**
**United States Army Legals Service Agency**

**THOMAS D. DINACKUS**
**U.S. Department of Justice**
**Commercial Litigation Branch**
**Civil Division**

**June 29, 2006**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . iii

DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF ENRON FEDERAL SOLUTIONS, INC.'S COMPLAINT AND DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS- MOTION FOR PARTIAL SUMMARY JUDGMENT

I. Overview . . . . . . . . . . 1

II. Counts Three and Four of EFSI's Complaint Do Not Present the Narrow Form of Quantum Meruit Claims Cognizable in This Court . . . . . . . . . . 3

III. The Government is Entitled to Summary Judgment as to All Counts Not Dismissed Purusant to Rule 12(b)(1) Because the Only Reasonable Construction of the Termination Liability Clause Renders It Applicable to Situations Not Presented in This Case, and Plaintiffs Are Not Entitled to Compensation for the Upgrades Abandoned by EFSI When It Abandoned Performance of the Fort Hamilton Utility Services Contract . . . . . . . . . . 7

A. The Plain Language of the Termination Liability Clause Confirms That It Does Not Apply In a Situation Where the Contractor – Not the Government – Discontinues Contract Performance . . . . . . . . . . 7

B. Plaintiffs' Argument That the Parties Intended the Termination Liability Clause to Apply to All Terminations, Including Default Terminations, Is Wholly Without Any Support . . . . . . . . . . 10

C. The Court Should Disregard Plaintiffs' Arguments Attacking the Positions Taken by the Contracting Officer Because the De Novo Standard of Review for Contract Dispute Act Appeals Renders Irrelevant the Positions Taken Before the Appeal to This Court . . . . . . . . . . 13

D. The Army Did Not "Impliedly Accept" the Utility Systems Upgrades and Improvements . . . . . . . . . . 13

Table of Contents (continued)

Page

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

NOTICE OF FILING

APPENDIX

# TABLE OF AUTHORITIES

Page(s)

## CASES


Atlas Corp. v. United States, 895 F.2d 745 (Fed. Cir.), cert. denied, 498 U.S. 811 (1990) . . . . . 6, 16

Fluor Enterprises, Inc. v. United States, 64 Fed. Cl. 461 (2005) . . . . . 4

Foman v. Davis, 371 U.S. 178 (1962) . . . . . 6

Gold Line Refining, Ltd. v. United States, 43 Fed. Cl. 291 (1999) . . . . . 4

Helix Electric, Inc. v. United States, 68 Fed. Cl. 571 (2005) . . . . . 9

Hercules, Inc. v. United States, 292 F.3d 1378 (Fed. Cir. 2002) . . . . . 9

ITT Federal Support Services, Inc. v. United States, 531 F.2d 522 (Ct. Cl. 1976) . . . . . 6, 16

In re Enron Corp., 314 B.R. 524 (Bankr. S.D.N.Y. 2004) . . . . . 2

In re Enron Corporation Securities, Derivatives & ERISA Litigation, 235 F. Supp. 2d 549 (S.D. Tex. 2002) . . . . . 2

Jablonski v. Pan American World Airways, Inc., 863 F.2d 289 (3d Cir. 1988) . . . . . 6

John C. Kohler Co. v. United States, 498 F.2d 1360 (Ct. Cl. 1974) . . . . . 14, 15

M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203 (Fed. Cir. 2004) . . . . . 9

National Steel and Shipbuilding Co. v. United States, 419 F.2d 863 (Ct. Cl. 1969) . . . . . 9

Perri v. United States, 340 F.3d 1337 (Fed. Cir. 2003) . . . . . 3

Saladino v. United States, 62 Fed. Cl. 782 (2004) . . . . . 6

Schism v. United States, 316 F.3d 1259 (Fed. Cir. 2002), cert. denied, 539 U.S. 910 (2003) . . . . . 6, 16

Table of Authorities (continued)

Page(s)

Slovacek v. United States, 40 Fed. Cl. 828 (1998) . . . . . . . . . . 6

United States v. Amdahl Corp., 786 F.2d 387 (Fed. Cir. 1986) . . . . . . . . . . 4

Urban Data Systems, Inc. v. United States, 699 F.2d 1147 (Fed. Cir. 1983) . . . . . . . . . . 4

Wilner v. United States, 24 F.3d 1397 (Fed. Cir. 1994) . . . . . . . . . . 13

**STATUTES**

41 U.S.C. § 609(a)(3) . . . . . . . . . . 3, 13

**REGULATIONS**

FAR § 52.241-10 (Feb. 1995) . . . . . . . . . . Passim

**MISCELLANEOUS AUTHORITIES**

Merriam-Webster's Collegiate Dictionary (10th ed. 1999) . . . . . . . . . . 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ENRON FEDERAL SOLUTIONS, INC., et. al.,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **No. 05-1000C (04-254C)**<br>**(Consolidated)**<br>**(Judge Block)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF ENRON FEDERAL SOLUTIONS, INC.'S COMPLAINT AND DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rules 12(b)(1) and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), and this Court's Order entered March 23, 2006 (Dkt. No. 16) defendant, the United States, respectfully submits the following Reply Brief in Support of its Motion to Dismiss Counts Three and Four and for Summary Judgment with Regard to Plaintiff Enron Federal Solutions, Inc.'s Complaint (Dkt. No. 17) ("Defendant's Motion" or "Def. Mot.") and the following Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment (Dkt. No. 19) (Plaintiffs' Cross-Motion" or "Pl. Cross-Mot."), which incorporates our Statement of Genuine Issues filed contemporaneously with this pleading in accordance with RCFC 56(h)2).

I. Overview

Because issues of subject matter jurisdiction concern this Court's power to entertain a plaintiff's claims, Defendant's Motion initially addressed whether this Court possesses the power to entertain the claims set forth in Counts Three and Four of the complaint. Def. Mot. at 6-10. Plaintiff, Enron Federal Solutions, Inc. (" EFSI"), denominated both of those counts as being

"Quantum Meruit/Unjust Enrichment" claims, Complaint (Counts Three and Four), and as we explained in our motion to dismiss, this Court generally lacks jurisdiction to entertain such claims. Def. Mot. at 6-8. We further explained that such claims have been allowed to proceed only in limited circumstances, none of which apply to EFSI's complaint. Id. at 8-10. In our reply below, we explain why plaintiffs' attempts to characterize EFSI's claims as being within the Court's limited jurisdiction are without merit.

With regard to the parties' cross-motions for relief pursuant to RCFC 56, while we do not agree with many of plaintiffs' Proposed Findings of Uncontroverted Fact,[1] the parties agree that questions of liability are properly before the Court as matters of law. As we explain below, while plaintiffs go to great lengths to make their arguments, they wholly ignore the operative language in the Termination Liability clause, which provided that its terms would apply "[i]f the Government discontinue[d] utility service under this contract before completion of the facilities cost recovery . . . ." Plaintiffs cannot dispute that it was EFSI and not the Government, which discontinued utility service under the contract: EFSI abandoned performance of the contract when its parent, Enron Corporation, collapsed and became the subject of "one of the most extensive investigations of corporate fraud and wrongdoing in the nation's history." In re Enron Corp., 314 B.R. 524, 529 (Bankr. S.D.N.Y. 2004). See In re Enron Corporation Securities, Derivatives & ERISA Litigation, 235 F. Supp. 2d 549, (S.D. Tex. 2002). Moreover, EFSI was

---

[1] Pursuant to RCFC 56(h)(2), we have filed a Statement of Genuine Issues contemporaneously with this opposition to plaintiffs' cross-motion, and our statement explains the bases for our factual disputes. We note that plaintiffs' response to Defendant's Motion did not comply with RCFC 56(h)(2) inasmuch as plaintiffs did not file a Statement of Genuine Issues.

terminated for default, and EFSI did not appeal the contracting officer's final decision setting forth the default termination.

Now, plaintiffs can do little more than disregard the language of the Termination Liability clause – which they characterize as being "prefatory language," e.g., Pl. Mot. at 15 – and present an argument filled with hollow claims of righteous indignation. In addition, plaintiffs present several arguments which are not before the Court because of the de novo standard of review applicable in appeals brought in this Court pursuant to the Contract Disputes Act. 41 U.S.C § 609(a)(3). Finally, as yet another alternative fallback position to salvage EFSI's complaint, plaintiffs assert that the Army impliedly accepted the upgrades abandoned by EFSI when it defaulted on its contract. In making this argument, plaintiffs simply disregard the terms of the contract, which in no fashion provided for the delivery of the upgrades to the Army. As we explained in our motion for summary judgment and as we further explain below, the plain and substantive meaning of the Termination Liability clause renders it not applicable to a default termination setting, and plaintiffs have no additional right to recovery. Accordingly, defendant is entitled to summary judgment.

## II. Counts Three and Four of EFSI's Complaint Do Not Present the Narrow Form of Quantum Meruit Claims Cognizable in This Court

We explained in our motion to dismiss that this Court generally lacks subject matter jurisdiction over quantum meruit claims and that jurisdiction over such claims has only been recognized in the narrow case where an express contract between a contractor and the Government contained a defect which rendered it invalid or unenforceable. Def. Mot. at 8-9 (quoting Perri v. United States, 340 F.3d 1337, 1343-44 (Fed. Cir. 2003)). The case before this

Court does not present such a case; the contract between EFSI and the Government was valid and enforceable, and both parties performed under that contract until EFSI abandoned performance following the collapse of its parent. The Termination Liability clause is not defective; its express terms simply did not apply when the contractor discontinued providing utility service under the contract before completion of the facilities cost recovery.

Plaintiffs cite four cases for the proposition that "[a] plaintiff can recover . . . the reasonable value of goods or services rendered on a quantum meruit or quantum valebant basis, under an implied-in-fact contract theory." Pl. Mot. at 33-34. All four of those cases are easily distinguishable from the case before this Court, however, for the reason set forth in our motion to dismiss, i.e., they all involved defective contracts that were rendered invalid or unenforceable. See United States v. Amdahl Corp., 786 F.2d 387, 391-92, 392-93 (Fed. Cir. 1986) (contract award violated statute and was void ab initio and a nullity); Urban Data Systems, Inc. v. United States, 699 F.2d 1147, 1151-53 (Fed. Cir. 1983) (involving illegal "cost-plus-percentage-of-cost" contract); Fluor Enterprises, Inc. v. United States, 64 Fed. Cl. 461, 491-93 (2005) (absent statutorily mandated project estimate, contracting officer lacked authority to procure services under 41 U.S.C. § 254(b), and "illegality of contract [was] 'plain' and 'so substantial' as to nullify that portion of [plaintiff's] contract . . . ."); Gold Line Refining, Ltd. v. United States, 43 Fed. Cl. 291, 294 (1999) (contract contained "unauthorized price adjustment clause").

Thus, plaintiffs are in error when they claim that "EFSI's alternative claims for relief under quantum meruit fall well within this rule." Pl. Mot. at 34. Unlike the contracts in the four cases they cite, the contract between EFSI and the Government was valid and enforceable; it

simply did not provide EFSI with the relief the contractor sought in this default termination setting.

Similarly, plaintiffs' attempts to find jurisdiction based upon an alleged implied-in-fact contract are misplaced because the case law recognizing such a contract is predicated upon a finding of a void or illegal contract. The Termination Liability clause was not "defective," see Pl. Mot. at 34-35, because its express terms would have provided EFSI with a vehicle to recoup its costs if the Government had chosen to discontinue utility service under the contract before completion of the facilities cost recovery. In that case, the Government's actions would have deprived EFSI of the means to recover its costs through full contract performance over a ten-year period, and the Termination Liability clause sensibly would have shifted the risk of such a loss away from EFSI where the contractor was blameless. Under plaintiffs' bizarre analysis, however, the contractor would have been free to walk away from the Fort Hamilton contract as soon as it completed the system upgrades – as, in fact, EFSI essentially did – and the Government would be obliged to pay for all of the upgrades, even though the Government had contracted for EFSI to make the upgrades and retain title to the upgrades after performing for ten years! See Appendix to Def. Mot. ("App.") 6 (Contract § H.1), 9 (Contract § H.6).

In the final two pages of their opposition to the Government's motion to dismiss, plaintiffs baldly assert, first, that "EFSI's Complaint alleges sufficient facts to establish the existence of an implied-in-fact contract under which the requested relief may be granted." Pl. Mot. at 36. In making this assertion, plaintiffs apparently seek to preserve a implied-in-fact contract theory of recovery, even if the Court concludes (as it should) that Counts Three and Four fail to state a quantum meruit claim within this Court's jurisdiction. See id. ("Consequently,

notwithstanding the inclusion of the words 'unjust enrichment' in the title of Counts 3 and 4, the facts pleaded by EFSI and the assertions in Counts 3 and 4 provide a sufficient basis to proceed with those claims."). This claim is fatally flawed, however, because even if plaintiffs are correct that Counts Three and Four contain sufficient allegations of an implied-in-fact contract, as plaintiffs themselves recognized only two pages earlier in their brief, "[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract." Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir.) (citing ITT Federal Support Services, Inc. v. United States, 531 F.2d 522, 528 n. 12 (Ct. Cl. 1976)), cert. denied, 498 U.S. 811 (1990), cited in Pl. Mot. at 34. See also Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002), cert. denied, 539 U.S. 910 (2003).

Finally, plaintiffs ask for leave of Court to amend the allegations in Counts Three and Four to cure any insufficient allegations to assert EFSI's alleged "right to recovery of its costs under a quantum meruit valuation methodology, or in any other manner." Pl. Mot. at 37. While it is true that RCFC 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires," plaintiffs provide no substantiation for their naked conclusion that "minor changes to its pleadings" would cure any defects. As the Court explained in Saladino v. United States, 62 Fed. Cl. 782 (2004), "Notwithstanding the liberal standard in granting . . . motions [pursuant to RCFC 15(a)], leave to amend a complaint should not be granted when the amendment would be futile." 62 Fed. Cl. at 795 (citing, among others, Foman v. Davis, 371 U.S. 178, 182 (1962)). See also Slovacek v. United States, 40 Fed. Cl. 828, 834 (1998) (citing Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988)). Where, as

here, plaintiffs have asked for leave to amend as alternative relief to multiple prior alternative positions and have provided no details as to how amendment would cure the jurisdictional defects in Counts Three and Four, it is clear that amendment of the complaint would be an act in futility. Accordingly, plaintiffs' request for leave to amend the complaint should be denied.

## III. The Government is Entitled to Summary Judgment as to All Counts Not Dismissed Purusant to Rule 12(b)(1) Because the Only Reasonable Construction of the Termination Liability Clause Renders It Applicable to Situations Not Presented in This Case, and Plaintiffs Are Not Entitled to Compensation for the Upgrades Abandoned by EFSI When It Abandoned Performance of the Fort Hamilton Utility Services Contract

### A. The Plain Language of the Termination Liability Clause Confirms That It Does Not Apply In a Situation Where the Contractor – Not the Government – Discontinues Contract Performance

Although plaintiffs begin their argument with bombast and rhetorical claims of righteous indignation, e.g., accusations that "the Government has taken a 'defense-in-depth' approach," engaged in "interpretive sleight of hand," and has disregarded what they claim is "a fundamental principle permeating the law of Government contract terminations" 'You get what you pay for-you pay what you get,'" Pl. Mot. at 8-9, plaintiffs' argument proceeds to ignore both the plain language of the contract and fundamental legal principles for construing contracts. Moreover, plaintiffs disregard the incontestible facts and the governing law to present a bizarre depiction of the situation at Fort Hamilton, where EFSI abandoned performance of the contract and the upgrades to Fort Hamilton's utility systems when Enron Corporation collapsed.

As we explained in our opening brief, plaintiffs' contract claims rely upon the clause set forth in FAR § 52.241-10 (Feb. 1995), which provided, in part:

> TERMINATION LIABILITY (FEB 1995)
>
> (a) If the Government discontinues utility service under this contract before completion of the facilities cost recovery period specified in paragraph (b) of this clause, in consideration of the Contractor furnishing and installing at its expense, the new facility described herein, the Government shall pay termination charges, calculated as set forth in this clause. . . .

EFSI Comp. ¶ 12; FAR § 52.241-10.[2] The language of this clause could not be clearer. Its provision for the payment of termination charges only applies "[i]f the Government discontinues utility service under this contract before completion of the facilities cost recovery period . . . ." Id. (emphasis added). Plaintiffs cannot seriously dispute, however, that the EFSI – not the Government – discontinued providing utility services under the contract; EFSI did so as but one of the many elements of fallout from the Enron Corporation debacle.

In arguing for the application of the Termination Liability clause, plaintiffs adopt a number of tacts. First, they wholly ignore the opeartive language in the clause – "If the Government discontinues utility service" – characterizing it as "prefatory" and apparently urging that this language has no legal consequences. E.g., Pl. Mot. 14 ("prefatory phrase"), 15 ("prefatory language").

---

[2] This clause was included in the contract in accordance with paragraph H.8 of the contract, which provided, in part, "The termination liability of the parties with respect to the provision of electrical, natural gas, potable water, and wastewater utility service under this contract shall be based upon FAR 52.241-10 Termination Liability (Feb 1995)." See EFSI Comp., Ex. 1, p. 6 (lines 5-8).

The Court should easily reject plaintiffs' initial argument. It is fundamental that

> In construing a contract, a court must begin with plain language. M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004). The court "must construe the contract 'to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract.'" Id. (citing Hercules, Inc. v. United States, 292 F.3d 1378, 1381 (Fed. Cir. 2002)).

Helix Electric, Inc. v. United States, 68 Fed. Cl. 571, 582 (2005) (emphasis added). Contrary to these basic legal principles, plaintiffs' argument ignores the plain language of the contract: while the Termination Liability clause expressly limits its application to situations whether "the Government discontinues utility service," plaintiffs ask this Court to construe the Termination Liability clause as though it began with language such as, "If any party discontinues utility service under this contract . . . ." Such an argument flies in the face of fundamental rules of contract construction.

Further, plaintiffs' characterization of this contract language as being "prefatory" carries with it no legal significance. The word "prefatory" simply refers to the location of language within a written work, e.g., Merriam-Webster's Collegiate Dictionary at 918 (10th ed. 1999) (defining "prefatory" as "of, relating to, or constituting a preface" and "located in front"), but as the Helix Electric Court recently reaffirmed, this Court must give "reasonable meaning to all parts of the contract." 68 Fed. Cl. at 582 (emphasis added) (quoting M.A. Mortenson Co. v. Brownlee, 363 F.3d at 1206). In other words, all contract terms should be construed in a fashion that gives them legal significance, even if the Court accepts, for the sake of argument, the characterization of the language as being "prefatory." See also National Steel and Shipbuilding

Co. v. United States, 419 F.2d 863, 875 (Ct. Cl. 1969) ("The prefatory word 'all' in the contract clause meant, then, that no available effort might be omitted.").

B. Plaintiffs' Argument That the Parties Intended the Termination Liability Clause to Apply to All Terminations, Including Default Terminations, Is Wholly Without Any Support

Plaintiffs' motion presents a lengthy and largely hypothetical argument that the FAR did not prevent the use of the Termination Liability clause in a default termination setting and that the parties intended the Termination Liability clause to apply to all terminations, including those where the contractor abandoned performance. Pl. Mot. at 16-24. There are a plethora of reasons for the Court to reject this alternative argument.

At the outset, we note that plaintiffs' argument as to whether the FAR "prevented" the use of the Termination Liabililty clause in this setting is simply a red herring. The Termination Liability clause's plain language – prescribed by FAR § 52.241-10 (Feb. 1995) – made it not applicable to situations where a contractor prematurely discontinued utility service. Insofar as the clause expressly stated that it applied when the government discontinued utility service, there would be no reason for the FAR to include a superfluous regulation stating the obvious additional conclusion that the Termination Liability clause did not apply when a contractor discontinued service.

Aside from the plain language of the Termination Liability clause, however, the purpose of the clause makes it clear that it only should apply in situations where the Government – not the contractor – prematurely discontinues utility service. There can be no doubt that the clause is designed to compensate a contractor that makes a signficant investment predicated upon the

parties' expectation of a long-term relationship. If the Government chooses to discontinue that relationship early, such as might occur if an Army base were closed, then the clause sensibly would allow the contractor to recoup its investment because the Government's subsequent decision to discontinue service was not contemplated when the parties entered into the utility services contract.

The construction of the Termination Liability clause urged by plainitffs is preposterous and unsensible. If the Court were to accept plaintiffs' proposed construction, EFSI would have been entitled to be paid for its investment in the utility upgrades as soon as those upgrades were made. Once that occurred, EFSI could choose to walk away from its contractual obligations – as, in fact, EFSI did – and the Government would be obliged to pay for EFSI's investment. Simply put, neither the plain language of nor the underlying purpose for the Termination Liability clause support plaintiffs' proposed construction.

Plaintiffs urge that the Government's position renders meaningless the clauses referenced in paragraph C.4.7, regarding disposition of utility facilities at the conclusion of the contract. Pl. Mot. at 17-18. Plaintiffs' argument ignores that the clauses referenced in paragraph C.4.7 are simply cited as "See also" provisions that would apply in <u>different</u> settings, such as default terminations and terminations for convenience. <u>See</u> Contract, ¶ C.4.7 (quoted in Pl. Mot. at 17-18). A fair reading of paragraph C.4.7 confirms that this clause only established the Government's "option" to negotiate a sole source contract with the contractor or to reacquire facilities when the contract was terminated or expired; it did not supplant the default termination or termination for convenience clauses, both of which addressed issues beyond the utility facilities discussed in paragraph C.4.7.

Plaintiffs continue with a long analysis of various financial elements of the contract, Pl. Mot. at 18-20, capped by the following remarkable assertion:

> No provision of either EFSI's Technical Proposal or the Contract puts EFSI's capital investment in the utility at risk of forfeiture to the Government if EFSI does not compete [sic; presumably should be "complete"] the entire term of the Contract. On the contrary, as demonstrated through this Section I, the Contract, which includes EFSI's proposal, protects EFSI's right to payment for its upgrades and improvements to the Fort Hamilton utility systems under these circumstances.

Pl. Mot. at 19-20.[3] One reading this argument in isolation could be left believing that EFSI had been denied the opportunity to complete the performance of the contract for reasons wholly beyond its control. As the indisputable facts confirm, however, EFSI did not complete the contract because it abandoned performance of the contract when its parent, Enron Corporation, collapsed because of fraudulent activities and irregular business practices. Nevertheless, plaintiffs urge that the Government somehow entered into a bargain to fully compensate EFSI for its investment once that investment was made, even if it defaulted roughly eight years before completion of the contract term because of its parent corporation's dubious business practices. It is hard to imagine a more preposterous assertion.

---

[3] To be sure, when EFSI abandoned performance of its contract – approximately eight years early – it also abandoned the upgraded facilities. The contractor's abandonment of its property does not mean that the Government assumed the contractual risk to pay for it, however. Once EFSI abandoned the contract, the Army had no real choice but to retain it at Fort Hamilton. Plaintiffs do not assert that they ever requested "return" of the the upgraded facilities, nor do they posit what the Army could have done to "return" the upgraded facilities once EFSI abandoned performance of the contract.

C. The Court Should Disregard Plaintiffs' Arguments Attacking the Positions Taken by the Contracting Officer Because the De Novo Standard of Review for Contract Dispute Act Appeals Renders Irrelevant the Positions Taken Before the Appeal to This Court

Plaintiffs present two lengthy arguments addressing positions taken by the Contracting Officer. See Pl. Mot. at 21-24 (supplying "terms" for blank portions of Termination Liability clause), 25-29 (analyzing termination-for-default clause applicable to construction contracts). The pre-appeal positions taken by a Contracting Officer are not before this Court, however, when a contractor, such as EFSI, has appealed the Contracting Officer's final decision.[4]

EFSI's appeal to this Court, pursuant to the Contract Disputes Act, rendered the final decision irrelevant because Court of Federal Claims review is de novo. 41 U.S.C § 609(a)(3) (action in Court of Federal Claims "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court."). See Wilner v. United States, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994). Accordingly, this Court should disregard the two lengthy arguments presented by plaintiffs addressing pre-appeal positions of the Contracting Officer.

D. The Army Did Not "Impliedly Accept" the Utility Systems Upgrades and Improvements

As yet another element of their hydra-headed claim for contractual relief, plaintiffs assert that "the Government by its actions, has impliedly accepted both the utility sytems upgrades and

[4] Of course, EFSI never appealed the Contracting Officer's final decision which terminated EFSI's contract for default, and that final decision is now unappealable and beyond attack.

improvements that were performed by EFSI under the Contract, as well as the operations and maintenance services that were provided by EFSI." Pl. Mot. at 24.[5] The indisputable facts and relevant contract provisions confirm, however, that the Army never contracted to acquire the systems upgrades or improvements; EFSI was contractually required to make the upgrades and EFSI contracted to retain title to the upgrades following the completion of the ten-year contract. See App. 6 (Contract § H.1), 9 (Contract § H.6).

The notion that the Government impliedly accepted the upgrades and improvements is further belied by the express terms of the contract between the Army and EFSI, which included separate Contract Line Items for each year of the ten-year contract. We have attached the declaration of William E. Campbell, Jr., the Contracting Officer, as an appendix to this opposition to plaintiffs' cross-motion for partial summary judgment. Reply Brief Appendix ("Reply Br. App.") 1-31. As Mr. Campbell's declaration and the separate Contract Line Items (CLINs 0001-0050) confirm, the Army only contracted to make various payments during each year of the ten-year contract for various services provided; there was no Contract Line Item for the Government to "acquire" the utility system upgrades and improvements and, therefore, the Army could not "accept" the upgrades and improvements, expressly or impliedly.

In this regard, the single case cited by plaintiffs, John C. Kohler Co. v. United States, 498 F.2d 1360 (Ct. Cl. 1974), is easily distinguishable. In that case, the Government had contracted for a boiler, which exploded following installation. The boiler had been operated at

---

[5] Defendant does not dispute that it accepted operations and maintenances ("O&M") services under the contract and, further, does not dispute that it still holds the contract amount payable for the November 2001 invoice. See EFSI Complaint, Count Two. Defendant has not paid it because it is uncertain which of the plaintiffs ultimately is entitled to the payment. See Defendant's Statement of Genuine Issues, Response to Proposed Finding 25.

the government site for almost three months by the time it exploded, while being operated by a government employee. Id. at 1364. The Kohler Court held that the Government's conduct implied acceptance of the boiler, even though the Government had failed to perform a final inspection to confirm acceptance of the boiler. Id. at 1366. While the contract in Kohler provided for delivery of the supplies impliedly accepted, none of the CLINs in the contract with EFSI provided for delivery of the upgrades and improvements to the Army. Kohler, therefore, is not close to being on point.

In assessing plaintiffs' assertions, this Court should bear in mind that EFSI's abandonment of the contract and the utility systems upgrades and improvements presented problems for the Army beyond the mere need to find a follow-on contractor. While the Army did not contract to acquire the upgrades and improvements, plaintiffs have yet to explain how the Army could have "returned" them to EFSI. The plaintiffs presumably do not assert that the Army should have engaged yet another contractor to perform demolition activities to dismantle the upgrades and improvements for return to EFSI. Similarly, the plaintiffs presumably are not asserting that the Army should have disrupted the operations at Fort Hamilton while it dismantled the upgrades and improvements. It is undeniable that EFSI's investment was abandoned at Fort Hamilton, but that was the result of EFSI and Enron Corporation's decision to stop performing the Fort Hamilton contract. The wrongful actions of EFSI and its parent corporation cannot serve to transform this contract for services into some form of contract to insure benefits to the plaintiffs.

Finally, as was discussed above with regard to our motion to dismiss Counts Three and Four, the existence of an express contract precludes the finding of an implied-in-fact contract

dealing with the same subject matter, unless the alleged implied contract is entirely unrelated to the express contract. E.g., Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002), cert. denied, 539 U.S. 910 (2003); Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir.) (citing ITT Federal Support Services, Inc. v. United States, 531 F.2d 522, 528 n. 12 (Ct. Cl. 1976)), cert. denied, 498 U.S. 811 (1990). Plaintiffs' attempt to create an implied contract to deliver upgrades to the utility systems is contrary to the express terms of the contract in this case, pursuant to which EFSI was to retain its upgrades.

## CONCLUSION

For the foregoing reasons and the reasons set forth in our motion to dismiss and for summary judgment, defendant, the United States, respectfully requests this Court to dismiss Counts Three and Four of EFSI's complaint for lack of jurisdiction to consider the subject matter of those counts, pursuant to RCFC 12(b)(1). Defendant further respectfully requests that the Court enter summary judgment in its favor and against plaintiff, EFSI, upon the ground that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law, pursuant to RCFC 56(b).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

CAPTAIN PATRICK BUTLER
U.S. Army Legal Services Agency

/s/ Donald E. Kinner

DONALD E. KINNER
Assistant Director

THOMAS D. DINACKUS
U.S. Department of Justice
Commercial Litigation Branch
Civil Division

/s/ John Warshawsky

JOHN WARSHAWSKY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-0010
Facsimile: (202) 514-9163
Attorneys for Defendant

June 29, 2006

NOTICE OF FILING

I hereby certify that on June 29, 2006, a copy of foregoing "DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF ENRON FEDERAL SOLUTIONS, INC.'S COMPLAINT AND DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that parties may access this filing through the Court's system.

/s/ John Warshawsky
________________________________