**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ENRON FEDERAL SOLUTIONS, INC., et. al.,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **No. 05-1000C (04-254C) (Consolidated) (Judge Block)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFFS' RESPONSE TO THE COURT'S REQUEST FOR POST-HEARING BRIEFING IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF ENRON FEDERAL SOLUTIONS, INC.'S COMPLAINT AND DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to this Court's Order of April 18, 2007, defendant, the United States, respectfully submits this response to Plaintiffs' Submission In Response To Scheduling Order Dated April 18, 2007, and in support of Defendant's Motion to Dismiss Counts Three and Four and for Summary Judgment with Regard to Plaintiff Enron Federal Solutions, Inc.'s Complaint (Dkt. No. 17) ("Defendant's Motion" or "Def. Mot.") and in Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment (Dkt. No. 19) (Plaintiffs' Cross-Motion" or "Pl. Cross-Mot."). We have included the Court's questions to provide a framework, but we respond primarily to arguments made by the plaintiffs given that we have previously responded to the Court's questions in Defendant's Brief In Response To Court's Request For Post-Hearing Briefing filed May 25, 2007.

Contract Interpretation

1) Is the contract a hybrid of a services and construction contract, or is it strictly a services contract? What effect, if any, does that determination have on the parties' responsibilities? Does the definition of the contract as a services contract or as a hybrid contract limit or mandate the use of FAR provisions?

While plaintiffs argue in Plaintiffs' Submission In Response To Scheduling Order Dated April 18, 2007 ("P. Sub."), that the contract was a hybrid, plaintiffs' own statements indicate that it was not a construction contract, and therefore, not a hybrid contract, but a services contract. Under a typical construction contract, the government contracts for the acquisition of improvements. But plaintiffs argue that "EFSI had to pay initially for these improvements and then recover its capital investment, amortized over the ten-year term of the contract . . ." P. Sub. at 3. But the recovery of its "capital investment" is fundamentally inconsistent with a construction contract in which the Government simply pays a contractor to construct improvements on the property. That the contract is a services and not a construction contract is consistent with the terms of the contract because the contract does not include a contract line item number ("CLIN") for delivery of construction improvements to the Government. Plaintiffs acknowledge as much stating the "concept underlying the privatization contract was that the contractor would become the owner of the utilities and pay for the upgrades and replacements necessary for the systems to operate within applicable codes and regulations." P. Sub. at 5.

Plaintiffs also rely upon the Contracting Officer's decision stating that the contract was "for both construction and supplies or services." P. Sub. at 3-4. However, it is settled law that "findings of fact by a contracting officer are not binding in any subsequent court proceeding." Wilner v. United States, 24 F.3d 1397, 1401 (Fed. Cir. 1994). Furthermore, after the contracting

officer issues his decision, "the suit is to proceed de novo." Id. In sum, the contracting officer's decision, whether factual or legal, is not binding in further proceedings. See England v. Sherman R. Smoot Corp., 388 F.3d 844 (Fed. Cir. 2004).

In any event, it is clear that FAR § 52.241-10 is a termination for convenience clause based on the plain meaning of the language of the clause which states "[i]f the Government discontinues utility service under this contract . . ." FAR § 52.241-10 (Feb. 1995) (emphasis added). The plain meaning of this clause is that it applies only to terminations for convenience where the government terminates the utility services. In this case, EFSI terminated the utility services by abandoning the facility and turning it back over to the Government. Opinion and Order at 2, No. 04-254C (Feb. 27, 2006); EFSI Comp., Ex. 2, p. 2 (Contracting Officer's final decision (Aug. 11, 2005)). Furthermore, if this clause is interpreted as a termination for default clause rather than a termination for convenience clause, it makes the contract's termination for default clause, (FAR § 52.249-8) incorporated into the contract at Section I.46, meaningless. Clause 52.241-10 cannot be a general termination clause because, by its plain language, it only applies when "the Government discontinues utility service" which can only occur when the Government initiates a termination for convenience.

It is undisputed that EFSI abandoned the facility and the Contracting Officer terminated the contract for default pursuant to FAR § 52.249-8 which is a default clause for "Fixed-Price Supply and Service" contract, not a default clause for construction contracts such as FAR §52.249-10 (Fixed-Price Construction). Plaintiffs also argue that EFSI provided "Assets of immediate and permanent value to the Government" but this is only because EFSI abandoned the assets. Under the contract, the facility was to belong to EFSI, although the Government has an

option to repurchase the facility at the expiration of the ten-year contract. The Government did not exercise the option, rather, EFSI abandoned the facility prior to the completion of the ten-year contract.

2) What is the significance of the fact that this was a privatization contract?

Again, that the purpose of the contract was to privatize the facilities is not legally significant because the contract should be interpreted according to its express terms. However, plaintiffs acknowledge that the purpose of the contract was to allow “the Government to spread the costs of its needs for utility services and capital expenditures over time.” P. Sub. at 6. Yet, plaintiffs argue that it should fully recover all of its investment in the facility as though the Government terminated the contract for convenience even though the Government is not receiving this important benefit of the contract, namely allowing the Government to spread the cost of utility services over time.

Plaintiffs cite FAR § 36.101(c)(2) and argue that “the Court should consider incorporating into the Contract by operation of law the appropriate clauses addressing construction and upgrades to government property.” P. Sub. at 7. Yet on the very next page, plaintiffs argue that they “believe that there is no need to read any clauses into the Contract by operation of law.” P. Sub. at 8. The Government agrees with plaintiffs that there is no need to read any clauses into the contract by operation of law.

FAR Interpretation

3) What FAR provisions must be read into this contract as a matter of law? May parties to a contract negotiate to alter a mandatory FAR provision? Or are mandatory FAR provisions to be incorporated strictly?

The parties appear to agree that no additional FAR provisions must be read into the contract as a matter of law. See response to 2 above.

4) What case law or other support is there for these conflicting interpretations? In other words, is FAR § 52.241-10 a general termination clause applicable to both terminations for convenience and default termination situations, or is it strictly a termination for convenience clause? How do the termination process and procedures established by the FARs affect the above respective interpretations? Is § 52.241-10 a mandatory clause or can it be altered and adopted at the parties' discretion? What case law exists regarding interpretation of § 52.241-10? What "legislative" history exists regarding the promulgation of FAR § 52.241-10?

"Contract interpretation begins with the plain language of the agreement." Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991), citing Fort Vancouver Plywood Co. v. United States, 860 F.2d 409, 413 (Fed. Cir. 1988). Thus, the court should employ a "plain meaning" analysis in any contract dispute. Aleman Food Services, Inc. v. United States, 994 F.2d 819, 822 (Fed. Cir. 1993). It is clear that FAR § 52.241-10 is a termination for convenience clause based on the plain meaning of the language of the clause which states "[i]f the Government discontinues utility service under this contract . . ." FAR § 52.241-10 (Feb. 1995) (emphasis added). The plain meaning of this clause is that it applies only to terminations for convenience where the Government terminates the utility services. In this case, EFSI terminated the utility services by abandoning the facility and turning it back over to the Government. Opinion and Order at 2, No. 04-254C (Feb. 27, 2006); EFSI Comp., Ex. 2, p. 2 (Contracting Officer's final decision (Aug. 11, 2005)). Simply stated, if this clause is interpreted as a termination for default clause rather than a termination for convenience clause, it makes the

contract's termination for default clause, (FAR § 52.249-8) incorporated into the contract at Section I.46, meaningless because plaintiffs are asking the Court to make plaintiffs whole even though EFSI was terminated for default.

5) Did both contracting parties believe FAR § 52.241-10 applied to a default termination situation? If so, why, and where is this demonstrated in the contract or by extrinsic evidence? Was there a mutual mistake by the contracting parties regarding FAR § 52.241-10? What case law exists regarding mutual mistake in this type of situation?

Plaintiffs interpretation of Paragraph C.4.7 relies upon the reference to "Termination for Default, Termination for the Convenience of the Government and Termination Liability" at the conclusion of the clause as supporting plaintiffs' argument that FAR § 52.241-10 applies not only to terminations for convenience but also terminations for default. While this language is ambiguous, it certainly does not mean, as plaintiffs argue, that terminations for convenience and terminations for default are one and the same. If so, it would not be necessary to include a termination for default clause in the contract. Moreover, if the intention was to repay EFSI for all the improvements it made to the facility, the contract could have clearly stated that EFSI must be paid for the capital improvements even if the contract is terminated for default. This clause simply gives the Government the option to reacquire the facility at the end of the contract, but that is not what is occurred here since EFSI abandoned the facility forcing the Government to operate the facility on its own.

More importantly, plaintiffs' argument ignores the plain language of FAR § 52.241-10 which applies only to terminations for convenience based on the unambiguous language at the beginning of the clause stating "<u>[i]f the Government discontinues</u> utility service." FAR § 52.241-10 (emphasis added). EFSI must have known that this clause applied only to a

termination for convenience, because any other interpretation would be unreasonable.

Lastly, both parties agree that the doctrine of mutual mistake is not applicable here.

6) Does the question and answer language on page 4 of Amendment 5 to the Solicitation, which addresses FAR § 52.241-10, demonstrate that the government adopted EFSI's interpretation of § 52.241-10?

Again, the Government reiterates that the beginning of this section of questions and answers is clearly labeled as "For Information Purposes Only." Amendment 5 at 2. As a result, any answers to these questions are not part of the contract and are not binding on the parties.

7) How should the applicable FAR provisions be read in the contract? Does one FAR provision trump another? What about FAR § 41.101, the definitions section of the FAR for utility services?

Again, under the interpretation advanced by the Government in its Motion to Dismiss, the FAR provisions do not conflict with one another.

Plaintiffs quote FAR § 41.101 arguing that the Government is obligated to pay the contractor for any cost connection facilities when the contract is terminated. The clause includes the following:

> Termination liability means a contingent Government obligation to pay a utility supplier the unamortized portion of a connection charge and any other applicable nonrefundable service charge as defined in the contract <u>in the event the Government terminates the contract</u> before the cost of connection facilities have been recovered by the utility supplier (see "Connection charge").

FAR § 41.101 (emphasis added). But plaintiffs ignore the fact that the clause specifically applies only when "the Government terminates the contract," not for any reason as argued by plaintiffs. Again, plaintiffs ignore the plain language that clearly applies only to terminations for convenience and attempt to convert a termination for default into a termination for convenience.

Amortization Payments

> 8) What is the significance of the amortization payments? Why were they contracted that way?

Plaintiffs argue that the "amortization payments" support plaintiffs argument that the Government owes EFSI for the upgrades to the facility. P. Sub. at 20. As we stated in Defendant's Brief In Response To Court's Request For Post-Hearing Briefing, the purpose of the amortization payments was to provide a "detailed justification and rationale" for the prospective service provider's Total Annual Price. The amortization component to the price was simply for justification of the total price and did not imply that the Government was purchasing the facility given that the contract clearly provides that the service provider will "own . . . operate, and maintain the Fort Hamilton" utility services facility. Def. App., 4 (Contract § B.1.1).

Moreover, spreading the payments over a number of years was meant to encourage EFSI to fully perform. If, as here, EFSI chose not to fully perform, EFSI would not recover its investment in the facility.

Available Remedies

> 9) Can the Court award general contract damages in this case in light of the incorporated FAR termination provision, other provisions in the contract, or other FAR provisions incorporated by law? What about other damage or equitable remedies? Any case precedent?

We explained in our motion to dismiss that this Court generally lacks subject matter jurisdiction over quantum meruit claims and that jurisdiction over such claims has only been recognized in the narrow case where an express contract between a contractor and the Government contained a defect which rendered it invalid or unenforceable. Def. Mot. at 8-9 (quoting Perri v. United States, 340 F.3d 1337, 1343-44 (Fed. Cir. 2003)).

Plaintiffs correctly argue that their "remedies are limited to those available through the default termination provisions in the contract." P. Sub. at 22. However, plaintiffs ignore that they are seeking damages under the termination for convenience clause of the contract and that under plaintiffs interpretation of the contract, plaintiffs arrive at the same result regardless of whether the Government terminates the contract for default or for the convenience of the Government. As such, plaintiffs' interpretation is simply unreasonable.

10) What about the government's legislative remedy argument? What case law or statutory support exists for the government's position?

Plaintiffs argue that "diverting plaintiffs to the U.S. Congress for relief, would only delay the resolution of this case." P. Sub. at 22. But plaintiffs completely miss the point. The Government is not advocating that plaintiffs be "diverted" to the U.S. Congress for relief. The Government is simply pointing out that this Court lacks jurisdiction to provide any relief to plaintiffs. As stated in detail in our Motion to Dismiss, at best this Court has awarded damages based upon quantum meruit in only the narrowest of circumstances. As plaintiffs' claim does not fit within this Court's limited quantum meruit precedents, plaintiffs may attempt to convince the legislative branch that the Government should pay plaintiffs for the initial investment that they made in the Fort Hamilton facility because no judicial remedy is available. As a result, plaintiffs must seek relief, if any, from the U.S. Congress. While plaintiffs are free to pursue a legislative remedy with the Congress, this Court does not have jurisdiction to provide a remedy.

11) Does EFSI have to specifically plead quantum meruit in order to recover quantum meruit damages?

There is no need for plaintiffs to specifically plead quantum meruit because this Court simply does not possess jurisdiction to award quantum meruit damages. "Notwithstanding the

liberal standard in granting . . . motions [pursuant to RCFC 15(a)], leave to amend a complaint should not be granted when the amendment would be futile." 62 Fed. Cl. at 795 (citing, among others, Foman v. Davis, 371 U.S. 178, 182 (1962)). See also Slovacek v. United States, 40 Fed. Cl. 828, 834 (1998) (citing Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988)).

Here, plaintiffs correctly acknowledge the "general rule that where, as here, there is an express contract, an implied-in-fact contract will not be found." P. Sub. at 25 (citing Atlas Corp. v. United States, 895 F.2d 745, 754 (Fed. Cir. 1990), cert. denied, 498 U.S. 811 (1990)). However, plaintiffs' reliance upon Barrett Ref. Corp. v. United States, 242 F.3d 1055, 1060 (Fed. Cir. 2001) is misplaced because it does not support plaintiffs' contention that a party can recover under an implied-in-fact contract where an express contract "fails to contain a substantive provision regarding a material right of the parties." P. Sub. at 25. The court in Barrett stated that "[g]iven that the price escalation clause was unauthorized and unenforceable, we agree with the Court of Federal Claims' implicit legal conclusion that there was no longer any express clause covering price escalation, and thus, nothing to preclude an implied-in-fact agreement on that term." Barrett, 242 F.3d at 1060. But that certainly is not the case here where nothing in the contract is unauthorized or unenforceable. Plaintiffs argue that because the Government believes that the Termination Liability clause is inapplicable, the Court may find an implied-in-fact contract existed between the parties with respect to the termination for default. Id. Again, plaintiffs ignore the contract's termination for default clause, (FAR § 52.249-8) incorporated into the contract at Section I.46 which is applicable here, but instead attempt to argue that the contract does not address this issue because plaintiffs do not like the result under

the contract as written. Plaintiffs' situation is not analogous to the situation described in Barrett because the contract includes a default clause that is enforceable. Therefore, the general rule that "[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract" applies here and prevents plaintiffs from recovering based upon an implied-in-fact theory. Atlas, 895 F.2d at 754-55 (citing ITT Federal Support Services, Inc. v. United States, 531 F.2d 522, 528 n. 12 (Ct. Cl. 1976)). See also Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002), cert. denied, 539 U.S. 910 (2003).

As stated above, because any amendment would not cure the jurisdictional defects in the complaint, it is clear that amendment of the complaint would be an act in futility. Accordingly, plaintiffs' request for leave to amend the complaint should be denied.

CONCLUSION

For the foregoing reasons and the reasons set forth in our motion to dismiss and for summary judgment, our reply brief, and Defendant's Brief In Response To Court's Request For Post-hearing Briefing, defendant, the United States, respectfully requests this Court to dismiss Counts Three and Four of EFSI's complaint for lack of jurisdiction to consider the subject matter of those counts, pursuant to RCFC 12(b)(1). Defendant further respectfully requests that the Court enter summary judgment in its favor and against plaintiff, EFSI, upon the ground that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law, pursuant to RCFC 56(b).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ Robert C. Bigler
ROBERT C. BIGLER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-0315
Facsimile: (202) 514-8624
Attorneys for Defendant

June 29, 2007

NOTICE OF FILING

I hereby certify that on June 29, 2007, a copy of foregoing "DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S RESPONSE TO THE COURT'S REQUEST FOR POST-HEARING BRIEFING IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF ENRON FEDERAL SOLUTIONS, INC.'S COMPLAINT AND DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that parties may access this filing through the Court's system.

s/ Robert C. Bigler