**No. 05-1000 C (04-254C) (Consolidated)**
**(Judge Block)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**ENRON FEDERAL SOLUTIONS, INC., et al.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFFS' REPLY TO DEFENDANT'S BRIEF IN RESPONSE TO COURT'S REQUEST FOR POST-HEARING BRIEFING IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF ENRON FEDERAL SOLUTIONS, INC.'S COMPLAINT AND DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

---

**Timothy E. Heffernan**
**WATT, TIEDER, HOFFAR**
**& FITZGERALD, L.L.P.**
**7929 Westpark Drive, Suite 400**
**McLean, Virginia 22102**
**Telephone 703/749-1000**
**Facsimile: 703/749-0699**

**Attorney for Liberty Mutual Insurance Co.**

**John J. Pavlick, Jr.**
**VENABLE LLP**
**575 7th Street, N. W.**
**Washington, D. C. 20004**
**Telephone: 202/344-4000**
**Facsimile: 202/344-8300**

**OF COUNSEL**

**Charles R. Marvin, Jr.**
**VENABLE LLP**
**575 7th Street, N. W.**
**Washington, D. C. 20004**
**Telephone: 202/344-4000**
**Facsimile: 202/344-8300**

**Attorneys for Enron Federal Solutions, Inc.**

**Electronically Filed on June 29, 2007**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ENRON FEDERAL SOLUTIONS, INC., et.al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 05-1000C (04-254C)** |
| | ) | **(Consolidated)** |
| **UNITED STATES OF AMERICA,** | ) | **(Judge Block)** |
| **Defendant.** | ) | |

---

**PLAINTIFFS' REPLY TO DEFENDANT'S BRIEF IN RESPONSE TO COURT'S REQUEST FOR POST-HEARING BRIEFING IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF ENRON FEDERAL SOLUTIONS, INC.'S COMPLAINT AND DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Pursuant to the Scheduling Order entered by this Court on April 18, 2007, (Docket No. 33), plaintiffs, Enron Federal Solutions, Inc. ("EFSI") and Liberty Mutual Insurance Company ("Liberty Mutual"), by and through undersigned counsel, respectfully submit the following reply to Defendant's Brief in Response to Court's Request for Post-Hearing Briefing in Support of Defendant's Motion to Dismiss Counts Three and Four and for Summary Judgment With Regard to Plaintiff Enron Federal Solutions, Inc.'s Complaint and Defendant's Opposition to Plaintiffs' Cross Motion for Partial Summary Judgment ("Def. Resp.").

Axiomatically, to prevail on summary judgment, the Government must demonstrate that there are no material facts in dispute and that it is entitled to judgment as a matter of law. Despite several opportunities through the course of this litigation, the

Government has yet to offer a reasonable interpretation of the Contract or exposition of the facts that supports its motion. Moreover, the Government has never demonstrated a basis in government contract law pertaining to the termination of contracts that is consistent with the forfeiture it would have this Court impose. Consequently, the Government has failed to demonstrate that it is entitled to the relief it requests.

As Plaintiffs have demonstrated in their filings to date, the interpretation proffered by the Government is deficient in several respects. Specifically, the Government's proffered interpretation 1) fails to give force and effect to all of the terms and conditions of the Contract as originally drafted by the Government, 2) ignores the intent of the contracting parties, as evidenced by the express statements made by EFSI in its Final Proposal Revisions and by the express incorporation by the contracting officer of EFSI's Final Proposal Revisions into the Contract without modification, and 3) disregards the basic principles of government contract law affecting the rights of the parties to recover or retain the value of the work performed under a government contract when that contract is terminated for default. As a result, the interpretation proffered by the Government is unsupported by the facts and the law.

On the contrary, plaintiffs have demonstrated both the reasonableness in fact and law for their interpretation of the Contract EFSI, and the legal bases for the relief requested in their motion. As discussed in more detail below, in its responses to the Court's questions, the Government has not proffered any additional support for its position in this litigation.

## I. Plaintiffs Have Demonstrated That They Are Entitled To The Limited Summary Relief Requested - That The Contract Requires The Government To Pay EFSI For The Benefits The Government Received Under The Contract.

Contrary to the broad, dispositive relief requested by the Government, plaintiffs have requested relief of a more limited scope. Plaintiffs have requested only that this Court confirm that where, as here, the Government has requested, received, and retained benefits under a contract, the Government must compensate (or credit) the contractor for the price or value of those benefits, even if the Government chooses to terminate the contractor for default. As plaintiffs demonstrated in their filings to date, the facts surrounding the negotiation and award of the Contract support plaintiffs' position that the Contract provided for such payment and even included a mechanism to help determine the amount of such payment.

In its attempt to avoid paying EFSI for the upgrades and improvements made by EFSI to utility systems owned by the Government and located on Government property, the Government has focused upon certain terms and has urged a narrow and distorted interpretation of those terms which ignores how those terms should operate in the overall contractual mechanism. Moreover, the Government again simply ignores the other provisions of the Contract identified and discussed in plaintiffs' previous filings which support plaintiffs' interpretation.

Finally, in its responses to the Court's questions, the Government has continued to misinterpret and misconstrue the terms of the Contract, and to disregard the evidence of the parties' interpretation of that same Contract at award, as reflected by their contemporaneous actions. Indeed, the Government has taken the extraordinary position that the answers to questions posed by offerors, which were formally included by the

Government in amendments to the Solicitation and which bind the winning offeror, are not binding on the Government. *See* Def. Resp., page 6. As demonstrated below, the positions inherent in the Government's responses cannot withstand reasonable scrutiny.

### A. The Purpose Of The Termination Liability Clause Is To Provide The Parties With The Mechanism To Calculate Payments Due.

In its attempt to sidestep its obligation to pay EFSI for the substantial benefits of the work EFSI performed under the Contract, benefits which the Government has accepted and continues to enjoy, the Government has focused its attention and analysis upon a single phrase in a single clause - a clause that was, and could only have been included to provide a mechanism to calculate the payment due to a contractor if the Government ended the contract prior to its term. *See* Def. Resp., page 5 (asserting without supporting evidence and contrary to the evidence of record, that both the Government and EFSI understood that the Termination Liability clause, FAR 52.241-10, applied only to terminations for convenience).

As plaintiffs have demonstrated, however, that single phrase is too slender a thread to hold the weight of the Government's harsh and unprecedented position. *See* Plaintiffs' Submission in Response to Scheduling Order Dated April 18, 2007 ("Pl. Resp."), pages 9-11 and references cited therein. The Government's latest attempt to buttress its position, i.e., its assertion that the clauses required by FAR 41.501 to be included in utility services contracts, *see* Def. Resp. at p. 2, and its implication that these clauses were required to be included "strictly in accordance with the guidance provided in the FAR," *see* Def. Resp., page 4, ignores the flexibility inherent in the FAR with respect to these contracts and the clauses that comprise them. Indeed, the FAR guidance

to which the Government refers does not prescribe that these clauses are to be used "strictly" according to their wording in the FAR, but instead prescribes these clauses for use on a "substantially the same as" basis. *See* Pl. Resp., page 8, *citing* FAR 41.501(a) and 2.101, and page 12. By this interpretative sleight of hand, the Government would have this Court ignore the flexibility that is inherent in the FAR and the very hallmark of these contracts.

Moreover, the Government's focus on the Termination Liability clause, FAR 52.241-10, and in particular the clause stating "[i]f the Government discontinues utility service," is undermined by the fundamental fact that the *Government*, not EFSI, was ultimately responsible for the discontinuation of utility services by an entity obligated to do so under the terms of the Contract. While EFSI's default is not disputed, under those circumstances, the Government had available the option to continue performance of the Contract. Indeed, the very function of the *performance* bond issued by Liberty was to ensure that EFSI's obligations to provide utility services would continue to be performed notwithstanding a default by EFSI. Upon EFSI's default, the Government had several options, including negotiation of a takeover agreement with Liberty or making a demand on the performance bond. For whatever reason, the Government chose not to pursue these readily available options to continue the provision of utility services. Instead, the Government chose to discontinue utility services under the Contract. Under these circumstances, the Government's reliance upon on the Termination Liability clause, FAR 52.241-10, is misplaced.

Finally, the Government, not EFSI, drafted the terms and structure of the Contract at issue in this litigation. Given the parties' arguments that the Contract can only be

interpreted reasonably in the manner proffered, any such ambiguity was not obvious on the face of the Contract. As plaintiffs have demonstrated in their filings to date, plaintiffs' interpretation of the Contract is reasonable in that it gives effect and meaning to all of the provisions of the Contract and is consistent with the contemporaneous interpretation of the parties at award, as evidenced in the contract documents, including the incorporation of EFSI's proposal into the contract by the Government. Consequently, should the Court determine that the terms or structure of the Contract are ambiguous in any way, the Court should invoke the doctrine of *contra proferentum* and resolve that ambiguity against the Government. *See Travelers Casualty and Surety Company of America v. United States*, __ Fed. Cl. __, Docket No. 04-487 C, Slip Opn., March 19, 2007, pages 19, 27 and cases cited therein.

**B. The Characterization Of The Government's Payment Obligation For Replacements And Upgrades To The Fort Hamilton Utility Systems As Amortization Payments Reflects The Intent Of The Parties That Such Payments Were To Discharge A Current Liability Of The Government.**

The Government's attempt to dismiss the provisions of the Contract describing the Government's liability for the price of the upgrades and improvements to the Fort Hamilton utility systems as "amortization" payments similarly misses the mark. In its response, the Government merely denies, without substantive analysis, the significance of the structure and description of Section B of the Contract, notably, the detailed breakout of the Contract price into specific components, including the Annual Initial Upgrade. For example, in the Contract, the Government expressly described the "Annual Initial Upgrade" as "[t]he Contractor's initial capital investment *price*, amortized over a desired period at an annual interest rate ….", Contract, ¶ B.2.1 (emphasis added). The

Government now asserts, however, without citing any evidentiary support, that the "amortization component to the price was simply for justification of the total price and did not imply that the Government was purchasing the facility given that the contract clearly provides that the service provider will 'own … operate, and maintain the Fort Hamilton" utility services facility. Def. Resp., page 9 (citation omitted). Interestingly, the words selectively omitted by the Government in its quotation from the Contract are "(or *replace* and own)," *see* Contract, ¶ B.1.1 (emphasis added), words which are consistent with Plaintiffs' characterization of the Contract with respect to the requirement to perform construction services.[1]

Next, the Government argues that the detailed breakdown in Section B was only "to provide a 'detailed justification and rationale' for the prospective service provider's Total Annual Price," Def. Resp., page 9 (emphasis in original). When the phrase is read in context, however, the Government's argument is not only unsubstantiated, but also misleading. The whole sentence states: "The following items are to be proposed in a Firm Fixed Price, lump sum methodology in Schedule B-1, but detailed justification and rationale will be required to evaluate appropriate responses for technical sufficiency." Contract, ¶ B.2. The "detailed justification and rationale" does not refer to, and is not accomplished by the mere breakout of the separately listed price items, including the

[1] The cited sentence states in full: "Fort Hamilton ("Installation"), New York, seeks one (1) qualified utility service provider or contractor ("Contractor/Offeror") to own (or replace and own), operate, and maintain the Fort Hamilton electrical, natural gas, potable water and wastewater utility systems to distribute electricity, natural gas, potable water and collect wastewater within the Fort Hamilton installation boundary." Contract, ¶ B.1.1.

Annual Initial Upgrade price, but establishes a requirement that each such component be separately supported by technical and cost information. Consequently, the phrase can have no effect upon the characterization of the contract price components, or their legal interpretation. The terms are what they appear to be - separate prices for separate portions of the Contract work.

Next, while the Government asserts that the original intent of the contracting parties was not for the Government to purchase outright the Fort Hamilton utility systems at award, it was most certainly their intent that the Government pay for the upgrades and improvements made to those utility systems under the Contract. The Contract also required that the upgrades and improvements be completed in the first contract year. *See* Contract, ¶ B.2.1. Thus, although the payments for such upgrades and improvements were to be made over the course of the Contract term, the Government's liability for the price of those improvements arose at award. No contract term made the Government's payment obligation for this work contingent in any respect upon the continued performance of the services portion of the contract effort. On the contrary, the Contract expressly characterized the payments due from the Government for the work as "amortization" payments, and even charged the Government interest on the debt.

### C. Any Increase In The Cost To The Government Of Utility System Improvements Which Is Caused By The Timing Of Its Payments For Such Work Should Affect Quantum, Not Entitlement.

The fact that there is a difference in the cost to the Government between requiring payment when the utility system upgrades and improvements were completed versus allowing payment over the term of the Contract should not excuse the Government from paying for those upgrades and improvements. Instead, the difference should only result

in an adjustment to its liability, based on the time value of money, to reflect that differential. Moreover, under the circumstances of this case, where the upgrades and improvements were made to utility systems that, contrary to the requirements of the Contract, remained in the possession of the Government at all times, the Government should not be allowed to avoid liability for upgrades and improvements that were made at its request, to its own property, and, importantly, that have provided benefits which the Government has continued to enjoy.

Viewed objectively, one should conclude that it is the Government, not EFSI, that is attempting to reap a windfall "recovery" by refusing to recognize and satisfy its liability for the value of the improvements to, and upgrades of the Fort Hamilton utility systems that were performed by EFSI under the Contract - improvements and upgrades which have directly, substantially, and continually benefited the Government. In stark contrast, the plaintiffs seek to recover only the value of those improvements and upgrades, less appropriate deductions (e.g., for completion of the work, the time value of money, and other termination expenses borne by the Government, if appropriate).

## II. If This Court Finds That The Contract Lacks A Clause Requiring The Government To Pay EFSI For The Substantial Improvements EFSI Made To The Government-owned Utility Systems On Fort Hamilton, Which Improvements The Government Continues To Enjoy, The Court May Find That The Parties Had An Implied-In-Fact Contract To That Effect.

In its response to the Court's Question # 11 (Does EFSI have to specifically plead quantum meruit in order to recover quantum meruit damages?"), the Government has essentially side-stepped both the question and the larger issue - the Government's liability to EFSI for quantum meruit damages awarded in response to a Government breach of an implied-in-fact contract. In their earlier filings and at the hearing held by the Court on

April 12, 2007, plaintiffs demonstrated the evidentiary and legal bases for EFSI's alternative claim. *See, e.g.*, Pl. Resp., pages 24-27. Ignoring the specific basis for the claim, and plaintiffs' demonstration that the resolution of such a claim is within the jurisdiction of this Court, the Government's response to the Court's question simply restates its broad and unsupported conclusion that "[t]here is no need for plaintiffs to specifically plead quantum meruit because this Court simply does not possess jurisdiction to award quantum meruit damages." Def. Resp., page 12 (emphasis in original). Consequently, should this Court conclude that the Contract lacks a clause requiring the Government to pay EFSI for the substantial improvements EFSI made to the government-owned utility systems on Fort Hamilton, which improvements the Government continues to enjoy, the Court may find that the parties had an implied-in-fact contract to that effect and that plaintiffs may recover quantum meruit damages on that basis.

## Conclusion

As Plaintiffs have demonstrated in their filings, despite the unfortunate circumstances that led to the termination of the Contract, Plaintiffs' claims are wholly in accord with the terms and conditions of the Contract, the contracting parties' interpretation of the Contract as evidenced by their statements and actions at the time of award, and the fundamental principles which allocate the rights of the contracting parties upon the termination of a government contract for default. Plaintiffs have demonstrated their entitlement to the limited summary relief requested, i.e., that this Court confirm that the Government must compensate (or credit) EFSI for the improvements to, and upgrades

of the Fort Hamilton utility systems that were performed by EFSI under the Contract, the benefits of which the Government accepted and continues to enjoy.

On the contrary, the Government has failed to demonstrate that it is entitled to summary judgment or to dismissal of EFSI's alternative claims for quantum meruit relief based upon the existence of an implied-in-fact contract. Consequently, Plaintiffs' Cross Motion for Summary Relief should be granted and Defendant's motions should be denied.

Respectfully submitted,

June 29, 2007

/s/ John J. Pavlick, Jr.

John J. Pavlick, Jr.
VENABLE LLP
575 7th Street, N. W.
Washington, DC 20004
Telephone: 202/344-4000
Facsimile: 202/344-8300

OF COUNSEL
Charles R. Marvin, Jr.
VENABLE LLP
575 7th Street, N. W.
Washington, DC 20004
Telephone: 202/344-4000
Facsimile: 202/344-8300

Attorneys for Enron Federal Solutions, Inc.

/s/ Timothy E. Heffernan

Timothy E. Heffernan
WATT, TIEDER, HOFFAR
& FITZGERALD, L.L.P.
7929 Westpark Drive, Suite 400
McLean, VA 22102
Telephone 703/749-1000
Facsimile: 703/749-0699

Attorney for Liberty Mutual Insurance Co.

DC1/243315

NOTICE OF FILING

I hereby certify that on June 29, 2007 a copy of the foregoing "PLAINTIFFS' REPLY TO DEFENDANT'S BRIEF IN RESPONSE TO COURT'S REQUEST FOR POST-HEARING BRIEFING IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND FOR SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF ENRON FEDERAL SOLUTIONS, INC.'S COMPLAINT AND DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John J. Pavlick, Jr.